## C. B. CARTER LUMBER COMPANY v. SIMPSON & HUFFMAN.

### No. 3167.

1. **Materialman's Lien.**—Persons owning a lot of land in severalty may jointly contract for the erection of one building thereon, and upon such contract being made and executed the parties so contracting may be joined in a suit to foreclose a mechanic's or materialman's lien arising out of the contract.

2. **Same — Fact Case.** — Audrey, with Simpson & Huffman, owned a city lot— Audrey a part and Simpson & Huffman another part in severalty. They entered into a joint contract with a builder to construct a house upon the lot. The building was constructed. In the course of the work the contractor obtained lumber from the Carter Lumber Company, which was used in the building. The lumber company fixed its lien upon the lot, etc., against the three owners, and brought suit against the contractor and the owners to foreclose the lien. Exceptions were taken for misjoinder of parties defendant. By supplemental petition the lumber company alleged a settlement with Audrey for the proportion against his part of the lot, and dismissed as to him. *Held*, that it was error to sustain demurrer and exceptions in favor of Simpson & Huffman. The lien could be enforced in the suit against them.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

The opinion states the case.

*Brown, Hall & Freeman*, for appellant.—1. The fixing of a materialman's lien under our statute is a proceeding in rem, and the reference to the owner is more a matter of description than a necessary element in the creation of the lien.

2.   The materialman's lien is based upon the fact of furnishing the materials under and by virtue of a contract made with the contractor by the owner, and not by reason of the fact that the person in possession or the person claiming to be the owner and who contracted with the contractor to build the house, is the qualified or absolute owner of the land on which the building is erected.

3.   The lien of a materialman may be fixed as a unit on several different buildings owned by the same person, or on land owned by different persons, if the persons owning the different parcels of land agree among themselves and with the contractor to erect but one house on the land so severally owned.   68 Texas, 521; 56 Texas, 299; 66 Texas, 110; Phill. on Mech. Liens, pp. 603–605, 613, note 3; Mandeville v. Reed, 13 Abb. Pr., 101 U. S., 834; 61 Am. Dec., 700; 79 Am. Dec., 278; 35 N. W. Rep., 894; 16 Pac. Rep., 410; Jones on Liens, secs. 1421, 1597, 1600, 1604–1607; Goldheim v. Clark, 13 Am. Rep., 363; 34 N. W. Rep., 104; 14 N. E. Rep., 923; 44 N. W. Rep., 3; 38 Mo. App., 404; 28 Mo. App., 666; 23 Pac. Rep., 1024; Morgan v. Taylor, 5 N. Y., 920; 22 Pac. Rep., 407; Lewis v. Saylors, 73 Iowa, 504; 22 Neb., 126.

4.   Persons owning certain parcels or lots of land in severalty have a right to agree among themselves that for the purpose of building they will treat their several interests in the land as common property in order to erect a single building; and having so agreed, and having entered into a joint contract with a contractor to erect but one house, the materialman is entitled to a lien on the house and lot or lots on which it rests for the material furnished in its construction.

5.   The fact that more land was included in the description for lien, or that more money was charged before the apportionment was made, does not destroy the lien.   Phill. on Mech. Liens., pp. 136, 137; Jones on Liens, 1256–1258; Pome. Eq., secs. 811, 812, 804, 805; 13 N. H., 360; 28 Me., 525; 20 Conn., 90; 28 Texas, 415, 730; 73 Wis., 217.

*C. A. Culberson,* for appellees.—1.   The fixing of a lien upon the property of a citizen for labor or material in favor of a person with whom he has no contract is an extraordinary proceeding; is in derogation of the common law; is purely a creature of statute, and one invoking the remedy must fully comply with the law.   Equity can not be called to aid the statute.   Kneeland Mech. Liens, secs. 161–163, 263–266; 2 Jones on Liens, secs. 1554–1556; Mushlitt v. Silverman, 50 N. Y., 360; Wager v. Briscoe, 38 Mich., 587; Gale v. Blaikee, 129 Mass., 206.

2.   Our statute and those throughout the Union provide, that in order for a lien to attach in a case like the present, the contract, whether written or verbal, shall be filed with the clerk, with a verified bill of particulars and a description of the lot, land, and improvements against which the lien is claimed.   Sayles' Civ. Stats., arts. 3165–3167.

This necessarily includes the name of the contractor, the owner of the property, the amount for which the lien is claimed, and the property sought to be subjected to the lien. It is not insisted that slight mistakes, verbal inaccuracies, trivial misdescriptions of property, or inconsiderable differences in the sums claimed and those proved, will avoid the lien. The contention is, that the lien must be fixed by the papers filed with the clerk, not by a trial in court, which can only enforce a lien already impressed upon the property; and any substantial variance in the particulars named between the lien so fixed and that sought to be foreclosed on the trial is fatal. This is not the case of a contractor fixing a lien against the owner, where the object of recording the lien is to give notice to third parties, who are thus put upon inquiry. Here a stranger to the owner undertakes to subject his property to a debt due primarily by another, and in which the chief purpose of the notice and record is to inform the owner of the full amount and particulars of the claim, and to arrest in his hands whatever sum may be then due the contractor. Fullenwider v. Longmoor, 73 Texas, 484; Bank v. Rockaway M. Co., 16 N. J. Eq., 150; Hoffman v. Walton, 36 Mo., 613; Fitzgerald v. Thomas, 61 Mo., 501; Gorgas v. Douglass, 6 Serg. & R., 520.

3. The appellant having filed a joint lien against the entire property for a gross amount and against all the parties as joint owners, the court correctly sustained the exceptions, for it was not authorized to apportion and readjust the claim. This is true, because:

(1) The petitions alleged that the lumber was furnished under an entire contract, and no facts are shown from which the court could determine the amount of lumber which entered into each house. In the absence of such facts the apportionment would be mere computation and conjecture, contrary to the language and spirit of our statute, which requires the lien filed to contain "a sworn account of the demand due him or them after all just credits have been given." The lien in such case would be fixed not by the filing of the contract and account as provided for and contemplated by law, but by the trial of the case, and then not by evidence of the amount of material which actually entered into each building, but what amount from calculation is supposed to have been used in the construction. Sayles' Civ. Stats., art. 3166; Phill. Mech. Liens, secs. 350, 357; 2 Jones on Liens, sec. 1323.

(2) It was the duty of appellant to file with the clerk a statement of the account against each house and each owner. It is no answer to this to assert that such a requirement would have been impracticable, for if the allegations shall be considered broader than mere conclusions based upon computation, by the supplemental and amended petitions it is shown that appellant knew the owners, the lot each owned with its exact boundary, and the precise number of feet of lumber used in

the separate houses and the value thereof. Phill. Mech. Liens, sec. 369a; 2 Jones on Liens, secs. 1315, 1316; Capin v. Paper Works, 30 Conn., 461; Fitzgerald v. Thomas, 61 Mo., 501; Plummer v. Eckenrode, 50 Md., 225.

(3) The lien sought to be foreclosed by the amended and supplemental petitions was not the lien fixed by the contract and account filed with the clerk in accordance with the statute. The lien given by law must be fixed in the manner therein provided. It must attach, if at all, by reason of the filing of the account, and it can not be varied, amended, or cured by the proceedings on the trial, the sole purpose of which is to enforce the lien, which has already attached. The rule is thus stated by a leading text writer: "When matters for which there may be a lien are mingled with others for which no lien is given, they can not be separated by a jury in accordance with oral evidence. It is not sufficient that the amount of the lien can be ascertained by extrinsic evidence, but the owner of the property is entitled to be informed of that fact from the account or statement of the lien filed in accordance with the statute." 2 Jones on Liens, sec. 1323.

On the same subject the Supreme Court of Missouri said: "When the contractor charges a single sum for different services, and any of them are of a character for which the law gives no lien, he can not proceed under the statute, because he has filed no proper account, and because it is impossible to ascertain the amount of his lien from the account filed." Edgar v. Salisbury, 17 Mo., 271; Schulenburg v. Robison, 5 Mo. App., 561.

In a case involving a lien upon three brick houses adjoining each other and owned by different persons, the Supreme Court of Pennsylvania thus stated the rule: "It is said to be extremely difficult for a lumber merchant, who furnished materials for several houses built under the superintendence of one agent, to keep a separate account against each house, but there would be little difficulty if he made proper inquiry before the lumber was furnished. And even if there were difficulty, why should he expect to be exempt from trouble at the expense of his neighbor? There is something so unjust in making one man pay for another's house, that nothing less than very clear expressions will warrant it. But the expressions in this act of assembly are so far from being clear in favor of a joint lien, that they must be twisted and tortured to make them bear the appearance of it. I conclude, therefore, that no such lien can exist in the case of several houses owned by several persons; but I give no opinion on the case of several houses owned by one person. The plaintiff, however, endeavored to mend his case on the trial by proving what lumber had been furnished for each house. But this was contrary to his demand set forth in the scire facias, and contrary to his claim filed of record. He can not be permitted thus to vary his pretensions. The question is, whether the

act of assembly authorized this joint claim against the three houses. If it did not, the filing the claim in the office of the prothonotary was a void act, and the scire facias has nothing to rest upon. I am of the opinion that the joint claim was unauthorized, and consequently there never was a lien.'' Gorgas v. Douglass, 6 Serg. & R., 520. See also Waldroff v. Scott, 46 Texas, 5; 2 Jones on Liens, secs. 1310, 1311, 1315, 1316, 1323; Lloyd on Buildings, sec. 280; Phill. Mech. Liens, secs. 369a, 377; Kneeland Mech. Liens, sec. 110a; Rathbun v. Hayford, 5 Allen (Mass.), 406; Childs v. Anderson, 128 Mass., 108; Cahill v. Capen, 18 N. E. Rep., 419; Gorgas v. Douglass, 6 Serg. & R., 520.

TARLTON, JUDGE, *Section B.*—The following substantially accurate statement of this case is taken from appellees' brief, supplemented by other extracts from the record which we think proper:

''The appellant, on March 4, 1889, filed suit in the District Court of Dallas County against C. L. Bessonette, A. C. Ardrey, James B. Simpson, and C. H. Huffman, stating substantially that the three last named entered into a contract with Bessonette to construct a brick building in the city of Dallas on a lot of ground described as on 'the west side of Elm Street in the said city of Dallas, beginning at the southwest corner of the lot upon which is situated the Fourth National Bank; thence in a northerly direction at right angles with Elm Street (about 14 degrees west) 200 feet to Pacific Avenue; thence westerly along the south line of Pacific Avenue 62½ feet; thence southerly perpendicular to Pacific Avenue 200 feet to Elm Street; thence eastwardly along the north line of Elm Street 62½ feet to the place of beginning;' that appellant furnished Bessonette lumber to build said house for the defendants Simpson, Ardrey, and Huffman, said lumber of value aggregating $2038.08, shown by an exhibit, none of which had been paid except $335.32 by Bessonette; that appellant has a lien on the lot described and the building thereon; that Ardrey, Simpson, and Huffman were notified in writing ten days before August 20, 1888, that appellant held such lien; that afterward, on August 20, 1888, appellant filed in the county clerk's office of Dallas County a sworn account of the demand due, and prayed for foreclosure of the mechanic's lien against the entire property.

''The account filed with the clerk, which was made an exhibit to the petition, was made out against 'C. L. Bessonette for Simpson & Huffman and Ardrey building,' and the affidavit attached to the account, made by the president of the company, stated, that the lumber was furnished Bessonette to erect a house 'for James B. Simpson and C. H. Huffman and A. C. Ardrey' upon the identical lot of ground described in the petition.

''On the 11th of March, 1889, Simpson & Huffman, who owned their interest as partners, filed their original answer, in which they pleaded in abatement to the suit, upon the ground, which was verified, that

there was a misjoinder of defendants, for that they 'and A. C. Ardrey are improperly joined as defendants, because the defendants Simpson & Huffman and Ardrey do not own and did not own at the date of the alleged contract sued on any part of the land described in plaintiff's petition in common or jointly; that defendants Simpson & Huffman and Ardrey do not own and did not own at the date of the alleged contract sued on any part of the building erected on the land described in the plaintiff's petition in common or jointly; that said defendants at the date of the alleged contract owned, and now own, and continuously since then have owned, separate, distinct, and well defined portions of said lands and the buildings respectively erected on said distinct portions of said land, and without any joint, common, or mingled interest in either land or buildings of any kind; and that defendants Simpson & Huffman together and defendant Ardrey alone had separate and distinct written contracts with defendant Bessonette for the erection of their respective buildings on the land owned separately by them as aforesaid.'

"On the 13th of March, 1889, the defendant Ardrey filed a similar plea in abatement.

"On March 15, 1889, Messrs. Thompson & Clint filed a general demurrer and answer for the four defendants, but they represented Bessonette only, and this answer for the others was inadvertently filed. Simpson & Huffman and Ardrey were represented by different counsel and filed separate pleadings.

"The appellant filed its first supplemental petition on January 9, 1891, in which it was insisted substantially that the appellees and Ardrey should not be heard on their pleas in abatement; that the house built on the lot described was built at the same time by the same man under a joint contract with all the joint owners; that the contract for the brick work was entered into by said three parties with one Sanderson; that the walls, flooring, roof, ceiling, joists, doors, and windows were all of the same kind of material and finish as to size, weight, thickness, and appearance, and were all built together by the same contractor upon the same estimates; that the plans and specifications were made for one house, and that the completed structure is but one house on one continuous lot of ground, having but one foundation, four outer walls, one floor, one roof, and one stairway; that appellant furnished the material to Bessonette, relying upon the agreement between Ardrey and Simpson & Huffman with Bessonette, that they would together erect but one house; that by the specifications and contract with Bessonette, and by the assurance of Bessonette, the contractor, it was fully advised of the fact that said Ardrey and Simpson & Huffman had agreed among themselves that together they would erect only one house; that the defendants Ardrey and Simpson & Huffman agreed to build but one

house, and to treat the lot as joint property, so far as concerned the construction of the house, for the purpose of saving the cost of construction, amounting to one-fourth less than the cost would otherwise have been; that the defendants reserved from Bessonette 15 per cent of the contract price to indemnify themselves against privileged claims; that for these reasons appellees were estopped from asserting that their interest was several; that of the lumber furnished by appellant, 67,873 feet were used in that part of the building claimed by Simpson & Huffman, and 21,851 feet were used in that part claimed by Ardrey; and that the relative amount due from Simpson & Huffman was $1289.59, and the sum due from Ardrey was $415.12. It prayed judgment against the defendants jointly or against them separately, as to the court might appear just and proper.

"Appellant on January 9, 1891, also filed what is termed 'plaintiff's amended supplemental petition,' its purpose being stated as 'amending and correcting its first supplemental petition filed herein.'

"This amendment declared, that the appellant had compromised with the vendee of Ardrey, and disclaimed all right, title, or interest in that portion of the lot and building claimed by Ardrey, and had relinquished its said lien on said lot and building; and that appellant now only seeks to foreclose its lien 'on that portion of the lot or block, and the improvements thereon situated, owned or claimed by James B. Simpson, and which lot or block is more particularly described as follows: Beginning on Elm. Street, on the southwest corner of the lot which was formerly occupied by the Fourth National Bank, and now owned by James B. Simpson; thence in northerly direction at right angles with Elm Street about north 14 degrees west 200 feet to Pacific Avenue; thence westerly along the south line of Pacific Avenue 62½ feet; thence southerly perpendicular to Pacific Avenue 100 feet; thence east at right angles 25 feet; thence south 100 feet to Elm Street; thence east 37½ feet to place of beginning.'

"On the same day, January 9, 1889, the defendants Simpson & Huffman filed their first amended original answer, in which they insisted upon their plea in abatement and interposed several exceptions, the third being as follows: 'The so-called mechanic's lien endeavors to fix a lien against A. C. Ardrey and these defendants jointly upon the tract of land and house described in the original petition; while the supplemental and amended petitions seek to fix a lien separately upon the property of defendants which, both the house and lot, are different from that described in the original mechanic's lien and for an entirely different and distinct sum of money; and also seek to apportion between defendants and A. C. Ardrey the entire sum of money which it was sought to fix against their joint property as a lien in the so-called mechanic's lien.' "

The court sustained the foregoing third special exception, and the plaintiff failing to amend, the cause was dismissed as to Simpson & Huffman. This action of the court appellant seeks to have reversed on appeal.

It appears from the pleadings above set out, that A. C. Ardrey and Simpson & Huffman owned in severalty on Elm Street, in the city of Dallas, a lot, in dimension 62½ feet in width and 200 feet in depth. Of this lot A. C. Ardrey owned a specified portion 25 feet in width and 100 feet in depth, out of the southwest corner of the lot. The remainder was owned by Simpson & Huffman. According to the plaintiff's allegations (which for the purpose of considering the demurrer must be taken to be true), Simpson & Huffman and Ardrey contracted jointly with one Bessonette to construct a brick building on the lot which they so treated as their joint property. Plaintiff furnished the lumber to Bessonette with which to construct the building. Of this lumber, 67,873 feet, worth $1289.50, were used in that part of the building owned by Simpson & Huffman, and 21,851 feet, worth $415.12, were used in that part of the building owned by Ardrey. Suit having been brought by plaintiff, as a materialman, against C. L. Bessonette, as the contractor, and against A. C. Ardrey, James B. Simpson, and C. H. Huffman, as owners, to foreclose the materialman's lien on the building and the entire lot for the value of the lumber furnished, the three defendants last named pleaded in abatement, that they were misjoined, because they owned separate and not joint interests in the lot and building. Thereupon plaintiff pleaded, that it had settled with Ardrey for the value of the lumber used in his portion of the building, dismissed its suit as to him, and sought foreclosure of its lien against the portion, which it described, of the lot owned by Simpson & Huffman, and the improvements thereon, and for the value of the lumber used thereon. The court, on special exception, held that the relief last sought could not be granted, for two reasons: 1. Because the lien purporting to have been fixed was against three persons jointly for a sum due by them jointly; whereas the lien sought to be foreclosed was against different property held in severalty, and for a distinct and different sum of money. 2. Because an attempt was so made to apportion between defendants and A. C. Ardrey, tenants in severalty, the entire sum of money named in the original lien.

The correctness of the court's action in sustaining the special demurrer referred to is alone before us for consideration. Our statute, by which we must test the sufficiency of the lien relied on, is as follows: "Any person or firm, lumber dealer, artisan, or mechanic, who may labor or furnish material, machinery, fixtures, or tools to erect any house or improvement, or to repair any building or improvement whatever under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor, or contractors, upon com-

plying with the provisions of this act, shall have a lien on such house, building, fixtures, or improvements, and shall also have a lien on the lot or lots of land necessarily connected therewith, to secure payment for labor done, lumber, material, machinery, or fixtures and tools furnished for construction or repairs."

It seems to be admitted that the method prescribed by law with reference to all preliminary steps for the securing of the lien was pursued by appellants. It is further admitted, the pleadings of the plaintiff being taken to be true, that the lumber of plaintiff was used in the erection of defendants' house and for the improvement of their property; that defendants thus jointly contracted for the purpose of saving the cost of construction, and that they actually reserved 15 per cent of the contract price with which to secure themselves against privileged claims. If, on the facts stated in the plaintiff's original petition and its supplemental petition, the defendants, though owners in severalty, were properly joined, it is evident that Simpson & Huffman were in no condition to complain of the discontinuance of the suit as to the defendant Ardrey. The demand against their property was proportionately reduced; whereas on a joint demand, if maintainable, their property would have been responsible to plaintiff for the entire sum.

This question then arises: Can persons, who though in fact owners in severalty of a lot of land, yet jointly contract for the erection of one building thereon, be joined in a suit to foreclose the mechanic's or materialman's lien on such building? Or, in other words, can a materialman's lien arise out of a contract of this character?

We answer this question in the affirmative. Persons so contracting ignore the separate character of their estate. They treat the property as their joint estate. As between them and the mechanic or materialman with whom they contract, the property should be considered joint. The defendants jointly contracted with Bessonette, to whose rights plaintiff became subrogated. The lumber of plaintiff went at the instance of the defendants into the building as their joint property. Mandeville v. Reed, 13 Abb. Pr. (N. Y.), 176; Treat Lumber Co. v. Warner, 60 Wis., 186.

Again, it will be observed that property on which the lien in plaintiff's amendment is sought to be foreclosed is included in the property originally described; that the defendants are two of the original three defendants; that the sum demanded is a part of the original sum sued for, and represents the value of the lumber used for the remaining defendants on their building and on their lot. The fact that the lien is claimed on more land than it can lawfully apply to will not, in the absence of fraud or injury to the owner or some third person, vitiate it in its application to so much of the land described as it may properly apply to. Lyon & Gribble v. Logan, 68 Texas, 521; Lumber Co. v.

Russell, 34 N. W. Rep., 104.   Nor, in the absence of fraud, will a claim of lien by a materialman for more money than is due him defeat his right to recover for that which is really due.   Harmon v. Railway, 23 Pac. Rep., 1024; Harmon v. Railway, 22 Pac. Rep., 407.   And so, we apprehend, if by mistake or without fraud a lien is claimed against an excessive number of persons, it will not be vitiated as to the persons against whom it should justly exist, if they be in fact included in the claim.   If the lien here in question was sought to be applied to an excess of land, to an excess of persons, and for an excess of money, this misapplication, under the plaintiff's averments, is chargeable to the conduct of the defendants.   They are not, therefore, in a condition to complain.   Ardrey participated with Simpson & Huffman in entering into a contract which resulted in the improvement of his separate interest in the lot in question, and availed himself of the benefits of this contract, and Simpson & Huffman aided Ardrey in doing the same thing with reference to their interest.   Their conduct was such as to mislead the plaintiff, and must be deemed to have misled it.   Under the plaintiff's allegations, each of the defendants allowed the other to contract with reference to this lot as if it was the joint property of all of them, and reaped the benefit of this contract with reference to his separate interest.   Under such circumstances the property will be subjected to a lien for the materials so obtained.   Jones on Liens, secs. 1256–1258; Phill. Mech. Liens, pp. 136, 137.

We are aware that much contrariety of doctrine exists in regard to the question discussed.   The opposite view seems to be founded on the principle, that it is "unjust to make one man pay for another's house."   We can not appreciate the force of this argument applied to the facts here alleged.   Here, if Simpson & Huffman, under the lien originally claimed, should be required to pay for any portion of the improvements placed in that part belonging to Ardrey of the one building, or vice versa as to the latter, this consequence would be due to the joint conduct of the three.   On the other hand, if this property on account of the conduct of the defendants should be exempt from lien for the materials supplied by the plaintiffs, they, wholly blameless, might be made to contribute, without recompense, to the improvement of the property of others.   Such a consequence would be wholly inequitable.

The defendants Ardrey and Simpson & Huffman were not, under the facts alleged by plaintiff, in a position to plead misjoinder.   They might as between themselves, had there been no discontinuance, have sought as defendants an adjustment of the equities, and an apportionment in the order of foreclosure, of the lien to their several interests in the property.   This result was, under the plaintiff's amendment, practically sought for them.   Appellees should not therefore be heard to complain of the apportionment suggested by plaintiff.

Interpreting the rights of the parties according to the language and spirit of our statute on the subject of mechanics' liens, we think that the court erred in sustaining the exception, and we so recommend that the judgment be reversed and the cause remanded.

*Reversed and remanded.*