[S. F. No. 5802.  In Bank.—March 24, 1913.]

S. H. HARMON LUMBER COMPANY (a Corporation), Appellant, v. I. I. BROWN et al., Respondents.

E. L. MALSBARY, Appellant, v. I. I. BROWN et al., Respondents.

HARRY PALMER, Appellant, v. I. I. BROWN et al., Respondents.

W. P. FULLER & COMPANY (a Corporation), Appellant, v. I. I. BROWN et al., Respondents.

MECHANICS' LIENS—IMPROVEMENTS MADE BY PERSON NOT OWNER— FAILURE TO GIVE NOTICE OF NONLIABILITY.—Under section 1192 of the Code of Civil Procedure, as it read during the year 1907, improvements erected upon the land of one who, although not in fact authorizing them, fails to give the required notice of nonliability within three days after obtaining knowledge of the construction or intended construction, are deemed to have been constructed at the instance of the owner, and his interest is subject to mechanics' liens.

ID.—CONSTRUCTIVE KNOWLEDGE OF IMPROVEMENTS — FACTS PUTTING OWNER ON INQUIRY.—The knowledge which will subject the owner

**to** this burden is not alone actual knowledge. Constructive knowledge, i. e., notice of circumstances which would put a prudent man upon inquiry as to the facts of the construction, is equally potent to bind the owner.

ID.—BUILDING ERECTED BY LESSEE — CONSTRUCTIVE KNOWLEDGE OF LESSOR IMPUTED FROM TERMS OF LEASE—COVENANT BY LESSEE TO ERECT BUILDING.—An owner of land, who makes a lease of it which by its terms requires the lessee to erect a building on the entire lot "with all reasonable dispatch," and which further provides that the ownership of the building shall vest in the lessor upon the termination of the lease, and that a breach by the lessee of any of his covenants, including the covenant to build, should terminate the lease, is charged with constructive notice of the erection of the contemplated improvements by the lessee, and his interest in the land is subject to mechanics' liens, in the event of his failure to give the notice of nonliability required by section 1192 of the Code of Civil Procedure.

ID.—AUTHORIZATION TO LESSEE TO BUILD—OBLIGATION TO PAY TAXES—BUILDING TO BECOME PROPERTY OF LESSOR.—The lessor of a vacant city lot for a substantial rental, under a lease authorizing, but not requiring, the lessee to make improvements thereon, and providing that any building erected by the lessee, if not removed within a time limited, should become the property of the lessor, and should at once become security for the performance of all covenants of the lessee, and that the latter should pay all taxes on such improvements, is charged with constructive notice of the erection of a building on such lot by the lessee.

ID.—BUILDING ERECTED BY LESSEE ON LANDS OF DIFFERENT LESSORS—LIENS ATTACH TO ENTIRE BUILDING AND LAND CONVENIENT FOR USE.—Such lessors, being the owners in severalty of adjoining lots which they respectively leased to the same lessee, are charged with constructive notice of the erection by the lessee of a single building covering, in whole or in part, the lots owned by them severally, and upon their failure to give such notice of nonliability, the building as an entirety, and so much of each lot as may be required for its convenient use and occupation, became liable for the liens of persons furnishing labor or materials in its construction.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Gray & Cooper, Cooper, Gray & Cooper, and Adams & Adams, for Appellants.

Stafford & Stafford, and H. I. Stafford, for Respondent Agnes C. Doran.

Joseph Haber, Jr., for Respondents I. I. Brown et al.

SLOSS, J.—The above entitled actions for the foreclosure of mechanics' liens were consolidated for trial. At the close of the cases of plaintiffs, the defendants made motions for nonsuit, which were granted, and judgment dismissing the action entered. The plaintiffs appeal from the judgment.

The defendant Brown was and is the owner of a lot on the corner of Mission and Seventeenth streets, in the city and county of San Francisco, having a frontage of one hundred and ten feet on Mission Street. Adjoining this property to the south is a lot, fronting fifty feet on Mission Street, owned by the defendant Agnes C. Doran. On July 17, 1906, Brown leased his lot to the defendant Louis T. Samuels for a term of five years from August 1, 1906. The term was subsequently extended to July 31, 1914. In the lease Samuels covenanted that he would, with all reasonable dispatch, erect building improvements upon the demised premises. It was also agreed that all such improvements should at the expiration of the term, or sooner determination of the lease, become the property of the lessor. Samuels, on July 29, 1906, sublet the premises to the defendants Moses Davis and Samuel Davis for a term ending August 1, 1914, by a lease containing the same provisions with reference to improvements as those found in his lease from Brown.

On January 21, 1907, the defendant Agnes C. Doran leased her lot to said defendants Davis for a term of eight years beginning February 1, 1907. By this lease the lessees agreed to pay all taxes on "the value of all improvements that may be erected upon said land by said" lessees. They were given authority to remove any buildings or other improvements that might be erected by them on the land, provided that such improvements were removed before February 15, 1915. If not then removed, the improvements were to become the property of the lessor. It was further agreed that all improvements made upon the land should be security for the payment of rent and for the other covenants of the lease.

After the execution of the leases to the defendants Davis, said defendants employed the plaintiff Malsbary to prepare

plans for a building and to superintend its erection. The building was commenced in April, 1907, and completed in November, 1907. The various plaintiffs furnished labor and materials for use in, and which were used in the construction of the building, and, within the time allowed by the statute, filed claims of lien for the unpaid portions of their respective demands.

The building erected covers a frontage of one hundred and twenty feet of Mission Street. It occupies all of the Brown lot and the northerly ten feet of the Doran lot. Neither Brown nor Mrs. Doran ever posted the notice described in section 1192 of the Code of Civil Procedure, disclaiming responsibility for said improvements. The record contains no evidence tending to show that either of said defendants had actual knowledge of the construction in time to have posted such notice.

The principal question is whether, under the facts above recited, the defendants Brown and Doran should be held to have had constructive notice of the erection of the building in question, in such manner as to render their interests in the respective lots subject to the liens claimed by plaintiffs. The respondents contend: 1. That there was nothing to impute to either of the owners notice of the erection of any kind of an improvement upon either of the lots; and 2. It is argued that, if notice were to be imputed to them at all, it could only be notice to each owner of a building erected solely upon his or her lot, and not notice that a single building, covering, in part, both lots, was being erected "jointly on the two parcels of land." As a corollary to the second position, it is urged that neither lot of land is, so far as the interest of the defendants Brown and Doran is concerned, subject to the liens here asserted. In discussing these questions, we make no separate mention of the defendant Samuels, as his position is, for the purposes of this inquiry, substantially the same as that of the defendant Brown.

To the first of the propositions just stated, viz., that neither of the owners would, under the circumstances disclosed, be chargeable with notice of the erection of a building standing entirely upon his or her lot, we cannot give our assent. Under section 1192, as it read at the time of the transactions here in question, improvements erected upon the land of one who,

although not in fact authorizing them, fails to give the required notice within three days after obtaining knowledge of the construction or intended construction, are deemed to have been constructed at the instance of the owner, and his interest is made subject to liens (*West Coast Lumber Co.* v. *Newkirk,* 80 Cal. 275, [22 Pac. 231].) The knowledge which will subject the owner to this burden is not alone actual knowledge. Constructive knowledge, i. e., notice of circumstances which would put a prudent man upon inquiry as to the fact in question (Civ. Code, sec. 19), is equally potent to bind the owner. (*Santa Monica L. & M. Co.* v. *Hege,* 119 Cal. 376, [51 Pac. 555]; *Evans* v. *Judson,* 120 Cal. 282, [52 Pac. 585]; *Hines* v. *Miller,* [122 Cal. 517, 55 Pac. 401].) In each of the cases just cited the owner was, upon facts very similar to these appearing here, held to have had constructive notice of the contemplated improvements. In *Santa Monica L. & M. Co.* v. *Hege,* the owner, after verbally leasing a lot, gave his lessee permission to construct certain additions to a building which stood upon the lot. Upon these facts, the court below "properly held," says this court, "that the building was constructed with the knowledge of the appellant (owner), and that his failure to give the notice required by section 1192 of the Code of Civil Procedure rendered his interest in the land subject to the lien." In *Evans* v. *Judson,* notice was held to be imputed to the owner from the fact that he had made a lease for six months, giving to the lessee the privilege of removing improvements made by him on the premises, unless the removal would damage the existing structure, in which case the added improvements were to become the property of the lessor. *Hines* v. *Miller* reached the same result. There the owners of a mine had leased it, giving to the lessees the right to sink shafts and run tunnels in working and developing the mine, the lessors to receive one-fourth of the gross output.

These decisions leave no room for question that Brown, at least, was chargeable with constructive notice of the erection of improvements under the authority of the lease made by him. That lease did not merely permit improvements; it bound the lessee to erect a building on the entire lot "with all reasonable dispatch." It further vested the ownership of such building in Brown upon the termination of the lease.

These circumstances certainly required him, as a prudent man, to prosecute inquiry to ascertain whether his lessee was complying with his obligation to promptly construct improvements which were to inure to the benefit of the lessor. Under the terms of the lease, it may further be remarked, a failure by the lessee to perform any of his covenants, including the covenant to build, was made a ground for terminating the lease.

In the case of the defendant Doran, the conclusion is not so obvious. Yet we think that she, too, must be held to have had constructive notice of the erection of any building that might be constructed on her lot by her lessees. While her lease to the defendants Davis did not require the latter to erect improvements, it contained provisions indicating clearly that the parties contemplated such erection. The lessees bound themselves to pay taxes on improvements that might be erected. While they were given the right to remove such improvements, this right was conditioned upon the removal being effected within a certain time. The lessor stipulated for and obtained under the lease a beneficial interest in any building that might be constructed. Not only was she to become the owner of such building if it were not removed within the time limited, but it at once became security for the performance of all covenants of the lessees. Knowing, then, that she had given the lessees the right to erect improvements upon her property, and being interested in any improvements which they might erect, the due protection of her own rights required her to make such inquiry as would disclose whether or not the lessees were proceeding to build upon the lot. Some weight, too, is to be attributed to the circumstance that the property leased was a vacant city lot, and that the lessees contracted to pay a substantial rental. The expectation of the parties must have been that the lessees would utilize the only available method of realizing a benefit from such property, that is to say, by improving it with a building which could be rented or used by themselves.

The decisions cited above fully justify the conclusion that the facts in evidence were sufficient to give Mrs. Doran constructive notice of the erection of a building on her lot by her lessees. Her position is closely analogous to that of the lessor in *Evans* v. *Judson*, 120 Cal. 282, [52 Pac. 585]. In that case as in this, there was a lease authorizing, but not

requiring, the making of improvements, and giving the lessor, in certain contingencies, an interest in any improvements made. The respondents seek to distinguish the Evans case upon the ground that the lease there under consideration was for a term of six months only. But while the opinion does lay some stress upon the shortness of the term, we do not regard that circumstance as the controlling one. The essential facts putting the lessor upon inquiry were that he knew that improvements were contemplated, and that he had an interest in such improvements as might be made. (See *Hines* v. *Miller,* 122 Cal. 517, [55 Pac. 401].)

There remains the question whether there is to be imputed to the respective lessors notice of the construction of a single building covering, in whole or in part, the lots owned by them severally. As the respondents view the case, the question is whether an owner of one lot can be charged with liens for the construction of a building erected in part on his lot and in part on the property of another, where the owners of the two lots have not jointly authorized the construction. It is, in effect, conceded that where there has been such joint authorization, the owners have by their act treated the several lots as a single parcel, and thus subjected the combined property to liens for the building or improvement erected on them jointly: *Lamont* v. *La Fevre,* 96 Mich. 175, [55 N. W. 687]; *Miller* v. *Shepard,* 50 Minn. 268, [52 N. W. 894]; *Menzel* v. *Tubbs,* 51 Minn. 364, [17 L. R. A. 815, 53 N. W. 653]; *Carter Lumber Co.* v. *Simpson,* 83 Tex. 370, [18 S. W. 812].) In such cases, the several holdings are, for the purposes of the lien law, to be regarded as a single tract. (*Hamilton* v. *Delhi M. Co.,* 118 Cal. 148, [50 Pac. 378].) But, say the respondents, such union of different parcels cannot be held to result where the respective owners have not joined in making or authorizing the construction. Neither Brown nor Mrs. Doran had actual knowledge that a building was being erected or was authorized to be erected on the land of the other. The constructive notice to be imputed to each owner is limited, as is claimed, to the improvement of the lot of such owner. The conclusion contended for is, therefore, that there was neither an actual joinder between the owners for the erection of a single building covering the property of both, nor constructive notice of such erection, binding them as if they had expressly so joined.

This argument, we think unduly limits the scope of the notice imputed to the respondents and the effect, under section 1192, of their failure to post a disclaimer of responsibility.

The provisions of the Code of Civil Procedure impose a lien upon the building or improvement (sec. 1183; *Willamette S. M. Co.* v. *Kremer,* 94 Cal. 205, 208, [29 Pac. 633].)' A lien upon the land upon which the building or improvement is constructed, or so much thereof as may be required for the convenient use and occupation thereof, is also given (sec. 1185). But the primary thing is the lien upon the building. The lien upon the land is incident thereto (*Humboldt L. M. Co.* v. *Crisp,* 146 Cal. 686, [106 Am. St. Rep. 75, 2 Ann. Cas. 811, 81 Pac. 30].)

The lien imposed upon the land under section 1185 is limited to the interest of the person who caused the building to be constructed, but by the provisions of section 1192 the interest of other persons who, with knowledge of the construction fail to disclaim, is also subjected to the lien. (*Harlan* v. *Stufflebeem,* 87 Cal. 508, [25 Pac. 686].) The defendants Davis had under their leases an interest in each of the two lots. Making a contract for the erection of a building to occupy said lots, they rendered the building itself, when constructed, liable as an entirety for liens of persons furnishing labor or materials in the construction. And unquestionably the interest of these defendants (Davis) in the several lots had been so joined for the purposes of the improvement as to render that interest in the land equally subject to the liens. The effect of section 1192 is to put the non-disclaiming owner (with notice) in the position which he would have occupied, if he had himself authorized the construction. The building "shall be held to have been constructed . . . at the instance of such owner." If then, the owners of the two lots here in question were chargeable with notice of the erection of the building, they are, by the statute, identified with the persons who actually caused the erection. The building was in fact authorized to be built as a whole upon land treated as a single parcel. The result of such authorization and construction properly falls upon those at whose instance the work must, under the statute, be held to have been done.

But, it is said, the respondents are not chargeable with notice that any joint construction on the two lots was being under-

taken. If such notice was necessary to the imposition upon their land of liability for the liens, we think they had it. The constructive notice imputed to them by the facts putting them upon inquiry extended to all matters which they would have learned by a proper prosecution of such inquiry. The execution of the leases required them, as we have seen, to be reasonably diligent to learn what improvements were being put upon their lots by their lessees. Such inquiry, if it had been undertaken, would have disclosed that a single building was being erected upon ground which comprised, in whole or in part, both lots. This fact itself, if properly followed by the inquiry which it would naturally induce, would have led to the further discovery that the building was being erected under the single authorization of persons claiming a leasehold interest in both lots. There is no reason for holding that each of the owners had a right to assume that the lessees would erect nothing but separate buildings upon the respective lots. Neither lease contains any restriction to this effect, and it is not contended that the defendants Davis violated any duty which they owed to either lessor by constructing the building as they did.

We hold, accordingly, that the land necessary for the convenient use and occupation of the building was liable, as a whole, for liens, regardless of the separate ownership. This being so, there is no merit in the additional ground of nonsuit urged against three of the plaintiffs, viz., that they had failed to prove allegations of their complaints to the effect that eleven-twelfths, in value, of the work done, was bestowed upon the property of Brown, and one-twelfth upon that of Mrs. Doran. In view of our conclusion that the land of both of these defendants was chargeable as a unit, this allegation was entirely immaterial, and no proof in support of it was required.

The judgment is reversed.

Angellotti, J., Shaw, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.