[Civ. No. 8267. First Appellate District, Division One.—July 27, 1932.]

HAMMOND LUMBER COMPANY (a Corporation), Respondent, v. SAM B. GOLDBERG et al., Defendants; HENRY RICHARDI et al., Appellants.

AMERICAN SYSTEM OF REINFORCING (a Corporation), Respondent, v. S. B. GOLDBERG et al., Defendants; HENRY RICHARDI et al., Appellants.

Hill, Morgan & Bledsoe, Benjamin F. Bledsoe, George B. Ross, C. A. Ballreich, G. C. De Garmo, H. B. Cornell and Winthrop M. Crane for Appellants.

Holbrook, Taylor, Tarr & Horton, Joseph K. Horton and O'Melveny, Tuller & Myers for Respondents.

OGDEN, J., *pro tem.*—The above actions, consolidated for trial, were instituted by the respondents to foreclose their respective mechanics' liens for the unpaid balance due on account of materials furnished in the construction of certain buildings and improvements constituting an "automobile laundry".

Respondent Hammond Lumber Company was awarded judgment against defendant Sam B. Goldberg in the sum of $7,967.03 and respondent American System of Reinforcing was awarded judgment against the same defendant in the sum of $434.51. Both judgments further decree, in the usual form, that respondents have respective liens on the three lots herein involved for the amount of their judgments and for the foreclosure thereof, said liens extending to the interest and estate of these appellants in and to said property. The defendant Goldberg has not appealed and the sole question presented is whether the respective estates of these appellants should be held subject to said liens.

The liens involve three adjoining lots situated in the city of Los Angeles and described as lots one, seven and eight of tract 6780. During the time in which the materials were furnished the legal title to lot one stood in the Title Guarantee & Trust Co., appellant Crowell being the owner of a contract to purchase the same. Subsequent to the construction, and the filing of the claims of lien, but prior to the trial of the actions, the latter became the legal owner by virtue of a deed executed pursuant to the terms of her contract. Why the defendant Title Guarantee & Trust Co. joins in this appeal is not made clear, as it does not appear, nor is it asserted in the briefs, that it has any further interest in the property. During all of the time with which we are here concerned, the appellants Richardi, who are hus-

band and wife, were the owners in fee of lots seven and eight.

Lot one is situated on the southeast corner of Beverly Boulevard and Juanita Avenue, having a frontage of 106 feet on the former and 125 feet on the latter. The easterly boundary line slants westerly so that the southerly boundary line is only approximately 95 feet in length. Lots seven and eight lie adjacent to lot one on the south, the two together having a frontage of 50 feet on Juanita Avenue with a depth of 125 feet.

On May 17, 1927, the appellant Crowell executed a written lease of lot one in favor of defendants Goldberg and Rosenfeld for a term of ten years, with the privilege to renew for a like term, together with an option to purchase. By the terms of this lease, the lessees were obligated to commence within thirty, and to complete within ninety, days from the date thereof the erection of a building on the premises, said building to cost not less than $15,000. It was also provided therein that the lessees have the right to erect such other buildings as they might desire, subject only to certain building restrictions. The building which was required by the lease to be erected was to become the property of the lessor, as were any other buildings erected by the lessees, unless the latter were removed prior to the expiration of the lease.

On May 20, 1927, but as the result of independent negotiations, the appellants Richardi likewise, by written instrument, leased for a similar term, and gave an option to purchase therewith, lots seven and eight to the same defendants. This lease also obligated the lessees to construct upon the leased premises, within ninety days from the date thereof, a building to cost not less than $5,000, and contained similar authority for the erection of others by the lessees, and provision for the ownership of the building so required to be erected in the lessors upon the termination thereof. Neither lease contained any reference to the other, nor were they recorded.

Subsequent to the execution of both leases, the defendant Goldberg took out in his own name as owner of the property, a building permit for a "Class C reinforced auto laundry and service station", and commenced the construction here involved and in connection with which the materials of re-

spondents were furnished. Three separate buildings were erected, all of which were of steel and cement construction. One building, 36 feet by 125 feet in size, was built entirely upon lot one, across the easterly portion thereof. This building was designed for washing automobiles therein. Through this building and extending beyond it to the south upon lots seven and eight ran a movable runway or wash rack resting upon a concrete foundation. Another building, 26 feet by 94 feet in size, adapted for use in greasing and polishing automobiles, and one end as an office, was erected across the westerly portion of lots seven and eight and extending into and upon lot one for about 50 feet. The third, designed for use in cleaning automobile chassis and housing the necessary boilers and machinery, extended across the easterly portions of lots seven and eight, being 50 feet by 29 feet in size. The three buildings were interconnected by underground air and water pipes and electric conduits required in the operation of the various machinery therein. The ground space between the buildings was entirely covered by a cement pavement and used for driveways and for storage of automobiles not in the actual process of renovation. The materials used in the construction were ordered and purchased by the defendant Goldberg as needed, no segregation being made, either by him or by respondents, with respect to the particular building for which they were used.

Defendants Goldberg and Rosenfeld failed to pay the balance due respondents for materials furnished and used in the construction of the buildings, and each respondent filed a single claim of lien therefor against the entire property, and in due course initiated these foreclosure proceedings. Neither claim of lien contains any segregation of materials with respect to buildings or separate ownership of the land, the claim of respondent American System of Reinforcing reciting that its materials were furnished for a "two story auto laundry and service station on Lots 1, 7 & 8 of Tract 6780", and the claim of respondent Hammond Lumber Company reciting that its materials were furnished for and used in the construction of "a building" located on said lots.

On June 7, 1927, construction work was started, the initial operations being in connection with the erection of the building first described herein, and situated exclusively upon lot one. Three days thereafter the appellant Crowell posted

on her property and filed for record, pursuant to the provisions of section 1192 of the Code of Civil Procedure, a verified notice by which she attempted to avoid responsibility, but in which notice she recited that she was the owner of the premises, and failed to make any reference to the contract of purchase, lease or lessee. It appears from the evidence that on July 5, 1927, construction operations were extended to and commenced upon lots seven and eight, and on that date the appellants Richardi posted on their property and filed for record a notice, in proper form, of nonresponsibility. The trial court held, and we think correctly as will hereinafter appear, both of these notices to be ineffective.

Appellants contend that the trial court erred in allowing single liens upon the two separate parcels of real property, owned by separate owners and by them separately and independently leased, since such decree unjustly renders each parcel liable for improvements placed upon the other, and that there having been no joint action or authority of the owners for the joint construction, no joint responsibility or liability can result.

The Supreme Court in *Harmon Lumber Co.* v. *Brown*, 165 Cal. 193 [131 Pac. 368], having under consideration a very similar state of facts, decided that such a single lien should be allowed upon both parcels without segregation. The main, if not the only, distinction, except as to the purported notices of nonresponsibility which will be discussed later, between that case and the case at bar lies in the fact that in the former a single building was involved whereas here we have a group of buildings.

The trial court here found "that said buildings and structures so erected and the whole of said parcels of real property were to be used by the lessees as an auto laundry, and operated as one business and one structure. Said structure was commenced June 7, 1927."

Section 1183 of the Code of Civil Procedure, at the time with which we are here concerned, provided in part: "Mechanics, materialmen, . . . performing labor upon, . . . or furnishing materials to be used or consumed in . . . the construction, alteration, addition to or repair, either in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, wagon road *or other structure,* shall have a lien upon the

property upon which they have bestowed labor or furnished materials for the value of such labor done and materials furnished.'' (Italics ours.)

The question then which must be first determined is, do the improvements here involved constitute but one structure within the meaning of the foregoing section? We believe that the trial court was justified in so determining. The three buildings were so situated upon the lots, were so designed and constructed and were so intended, that the value and usefulness of each was dependent upon the design, location and use of each of the others. They were connected by a concrete flooring and communicating wires, pipes and conduits essential to their use, but more by the purpose and object for which they were erected and exclusively adapted. As a group, they constituted one harmonious and useful development. Considered independently they lose their usefulness and value and fail to a large extent to enhance the value of the land it was sought to improve. That they were not physically joined together by common walls or roof, made unnecessary solely by virtue of those ideal climatic conditions with which our entire state is blessed, makes them no less a single development and structure within the intent of the section. Such conclusion is amply supported by and in accord with the authorities of this state.

In *Williams* v. *Mountaineer G. M. Co.*, 102 Cal. 134 [34 Pac. 702, 704, 36 Pac. 388], it was held that a claim of lien for materials furnished for the construction of a mill, tramway, boarding-house and reduction works upon a mining claim should be filed against the claim as a whole and not against the specific structures. The court there said: ''One who has built a chimney in a house, or a porch, or doorstep, has helped to build a structure, to-wit: a chimney, a porch, or doorstep; but he cannot acquire a lien upon these specific structures, and by detached sales destroy the value of the claims depending upon liens upon the whole house. A structure may be a part of another larger structure, and in reference to it constitute but a part of a structure. In such cases it is well settled the lien must cover the entire structure. It was so held in *Cox* v. *Western Pac. R. R.*, 44 Cal. 28.'' And, ''One contributing labor or materials to a structure must be held to have anticipated its future use.

It is necessary to do this in many cases in order to determine what the structure is upon which he is entitled to a lien. A drain to a house may be an appurtenance before either is used. I think the statute would cover a thing as an incident which was exclusively adapted to the use of the principal before actually used.''

In *Hamilton* v. *Delhi Mining Co.*, 118 Cal. 148 [50 Pac. 378], it was held that a single lien should be extended to two adjacent but separately owned mining claims where the respective owners had leased them to the same lessee and were cognizant of the fact that they were to be developed by him as one mine.

In *Mendoza* v. *Central Forest Co.*, 37 Cal. App. 289 [174 Pac. 359, 361], it was held that a farm development, consisting of ditches, drains, embankments and roads, constituted a structure within the meaning of the statute here under consideration, and a single lien upon the entire property was allowed for work done in connection therewith. The court there said: ''The farm development here contemplated was a finished piece of work composed of integral parts, some of which the statute expressly designates as structures, and when completed consisted of ditches, drains, embankments, roads, so correlated as to form one harmonious entity designed to accomplish a particular object and constituting a permanent and valuable improvement to the land and necessary to its highest and most profitable uses. When finished, it stood out as obvious and visible in its usefulness and its purpose as would a house, or barn, or any other of the structures enumerated in the statute. Viewing the statute with that liberality with which we are not only authorized, but by the statute itself we are enjoined to regard it, we feel no hesitancy in holding with the learned trial court that the work to which plaintiffs contributed, as shown, constituted a structure.''

The case of *Western Elec. Co., Inc.,* v. *Colley*, 79 Cal. App. 770 [251 Pac. 331], holding that an electric power line, consisting of poles, wires and other materials necessarily entering into the construction thereof, is such a structure, contains an exhaustive reference to the many authorities upon this subject.

Applying the principles enunciated in the foregoing to the case at bar, it is apparent that the development here,

consisting of three buildings and appurtenances, constituted but one structure within the meaning of the statute and is therefore as a single entity subject to respondents' liens, without necessity for segregation as to the particular buildings, or ownership of land, for which their materials were used.

Turning now our attention to the notices of nonresponsibility, we again must agree with the trial court that neither of them were in sufficient compliance with the statute to exempt the respective appellants from liability.

In 1925, the legislature amended section 1192 of the Code of Civil Procedure by inserting therein the requirement that the notice shall contain, in addition to a description of the property affected thereby, with the name and nature of the title or interest of the person giving the same, the "name of purchaser under contract, if any, or lessee if known". Notwithstanding that the appellant Crowell was a purchaser under contract, had leased the property affected and knew the name of the lessees, no mention of any of these facts was contained in her notice, it reciting in this regard merely that she was the owner of the property. It must be assumed that the legislature considered the inclusion of such information to be material and essential to the notice, with the intent and purpose that any person furnishing labor or material to the occupant of the premises might ascertain therefrom what, if any, title he possessed and be furnished with the means of obtaining the information in relation thereto. Otherwise the legislature would not have deemed the amendment worthy of its attention. And the reason for the requirement is particularly applicable here where the lessees in possession held themselves out to be the owners and neither the contract of purchase nor the lease appeared of record.

The courts, having adopted a rule of liberal construction relative to mechanics' liens, must follow a strict construction of any act or provision by which the owner of property upon which improvements are made may relieve himself from, or escape, liability therefor. See *Pasqualetti* v. *Hilson,* 43 Cal. App. 718 [185 Pac. 693], where such a notice, otherwise sufficient, was held ineffectual because acknowledged instead of verified.

 The notice of the appellants Richardi was posted on July 5, 1927, and filed for record the next day, July 6th. The statute requires the owner, in order to exempt his estate from the operation of the lien, to post and file the notice for record "within ten days after he shall have obtained knowledge of such construction". These appellants contend that although their notice was not given within ten days after commencement of construction on the Crowell lot, it was in time since it was given within ten days of the commencement of building operations upon their property. But, by virtue of our conclusion heretofore reached that the entire construction constituted that of one structure, it must follow that such notice was not timely. The statute starts the ten-day period from the time of obtaining knowledge of the construction, not from the time of obtaining knowledge of any part or stage of it. It being but one structure that was under construction, it must be said that its construction commenced on June 7th, and it is immaterial upon which lot operations were first initiated. The statute refers to but one construction and must be construed as intending thereby the construction of the structure upon which the lien, in the absence of the notice, would attach.

It therefore becomes pertinent to determine when the appellants obtained knowledge of the construction. It is apparent from the evidence that they all had actual knowledge of the commencement of operations on lot one, the appellant Crowell at least on June 10th when her notice was posted, and the appellants Richardi at least more than ten days prior to the posting of their notice. The Richardi notice was prepared on and dated June 13, 1927, Mr. Richardi testifying that he kept track of the lots to be prepared to post the notice as soon as work was actually commenced upon his property.

Appellants contend that their knowledge was limited to that of construction upon their own properties as authorized by their respective leases. Both the appellant Crowell and the appellants Richardi knew that their respective properties were leased to the defendants Goldberg and Rosenfeld to be used jointly for purposes of an automobile laundry and that improvements in connection therewith were contemplated by the lessees. Even though it be true, as they contend, that they had no actual knowledge of the

exact character of these improvements nor as to their location with respect to their different properties, such actual knowledge was not essential to liability. They must be held to have had constructive knowledge of these facts.

Appellants' contention in this regard is completely answered in *Harmon Lumber Co.* v. *Brown, supra,* which case, in view of our conclusions that the construction here was that of but one structure, is determinative of the case at bar. The facts there were significantly similar to the situation with which we are here concerned. The defendant in that case, Brown, was the owner of a lot in the city and county of San Francisco, having a frontage of 110 feet on Mission Street. Adjoining this property to the south was a lot, fronting 50 feet on the same street, owned by the defendant Doran. On July 17, 1906, Brown leased his lot to the defendant Samuels for a term of five years, which was subsequently extended for another eight years. In the lease Samuels covenanted that he would, with all reasonable dispatch, erect building improvements upon the demised premises, it being agreed that all such improvements should, upon the determination of the lease, become the property of the lessor. Samuels, on July 29, 1906, sublet the premises to the defendants Davis by a lease containing the same provisions with reference to improvements. On January 21, 1907, the defendant Doran leased her premises to the same defendants Davis for a term of eight years. By the terms of this lease, the lessees agreed to pay all taxes on the value of all improvements that might be erected upon the premises by them. The lessees were given authority to remove any buildings or other improvements they erected on the land, but if not removed within a stipulated time the same were to become the property of the lessor. After the execution of the leases to the defendants Davis, the latter caused the construction of a building occupying all of the Brown lot and the northerly ten feet of the Doran lot. Neither of the defendants Brown or Doran posted the notice of nonresponsibility contemplated by section 1192 of the Code of Civil Procedure, nor did either have actual knowledge of the construction in time to have done so.

The Supreme Court, through Mr. Justice Sloss, in a well-reasoned opinion, from which it would be but to unduly lengthen this opinion to quote the authorities and logic

therein relied upon, held that both the defendants Brown and Doran were chargeable with constructive notice, not only of the construction of improvements upon their respective properties, but of the erection of a single building upon ground comprising both lots, and concluded that the land necessary for the convenient use and occupation of the building was subject, as a whole, and without regard to the separate ownerships, to mechanics' liens arising out of such construction.

It should, perhaps, be here noted that in order to avoid any possible inequities which might result as a consequence of the above rule, the legislature has provided that, in a situation such as here exists, the trial court may, where it deems it equitable so to do, distribute the lien equitably as between the several parcels involved. (Sec. 1188, Code Civ. Proc.) This provision, however, was not added until the 1929 session and did not become effective until after the present lien rights accrued.

There remains undisposed of but one other contention, made by the appellant Crowell. The trial court found that the defendant and appellant Title Guarantee & Trust Co. had no notice of the construction until February 6, 1928, when it deeded lot one to appellant Crowell pursuant to her compliance with her contract of purchase. She contends that, since the legal estate of the former was not subject to the lien rights of respondents, when she acquired that interest her former interest became merged therein to constitute an estate superior to the liens. We see no merit in this contention. This appellant exercised all of the privileges of the legal owner of the property, held herself out to be such and executed the lease of the premises which authorized the construction which gave rise to the liens of respondents. That her equitable estate, which was subject to the liens, has now become perfected into a legal one, cannot operate to extinguish the liens of respondents which had previously accrued.

In *Bender v. Palmer*, 1 Cal. Unrep. 601, a similar situation was presented. There, one Calderwood, the person in possession and at whose instance the materials were furnished, did not, at the time of the accrual of the lien, have title to the property, the same being then vested in the United States government. It was held that the subsequent

acquisition of the legal title from the United States by the successors in interest of Calderwood did not operate to displace the lien which otherwise existed. And the court, appropriately to the case at bar, said: "And especially would this appear to be so, when, as here, the better title has been acquired because and as a consequence of the possession and claim of title held in the first instance."

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 26, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 22, 1932.