[No. B077562. Second Dist., Div. Four. Feb. 15, 1996.]

YOUNG KIM et al., Plaintiffs and Appellants, v.
JF ENTERPRISES et al., Defendants and Respondents.

**[Opinion certified for partial publication.‡]**

‡Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A.1.b., II.A.2., II.B., and III.

**COUNSEL**

Dalila Kamal-Griffin, in pro. per., and for Plaintiffs and Appellants.

Kendig & Ross, Dennis A. Kendig and Jeffrey W. Cowan for Defendants and Respondents.

## OPINION

**RUBIN, J.*** —Plaintiffs appeal from an order of dismissal entered after a demurrer to their second amended complaint was sustained without leave to amend. For reasons stated in the unpublished portion of the opinion, we conclude that the trial court should have sustained demurrers to only some, not all, of the causes of action. Accordingly, we affirm in part and reverse in part.

## I.

### Summary of Proceedings Below and Statement of Facts

#### A. The Parties.

On February 27, 1992, plaintiffs Young Kim (Kim), Francisco Marin (Marin), Paul Kean (Kean), Jennifer Harrewyn (Harrewyn) and Dalila Kamal-Griffin (Kamal-Griffin) filed their original complaint for foreclosure of mechanics' liens and damages.[1] Named as defendants were Yohanna Cyns-Knabben, doing business as Kunzler-Koerpekunst (Cyns-Knabben), not a party to this appeal; and respondents here, JF Enterprises (JFE), Micaela Mitchell, individually and as trustee, Michelle Mitchell, the Michelle Mitchell Trust, W. Constantine Mitchell, Michael Steiniger and Jeffrey Robertson (hereinafter sometimes referred to as respondents). The defendants other than Cyns-Knabben, JFE and Steiniger are involved in some capacity with the Michelle Mitchell Trust and are referred to collectively as "the trust."[2]

#### B. The Trial Court Proceedings.

One week after filing the original complaint, plaintiffs filed an amended complaint stating the following causes of action: foreclosure of mechanics' liens, recovery of unpaid wages, statutory penalties for unpaid wages, breach of contract, fraud, defamation, and intentional infliction of emotional distress. Defendants demurred, and the trial court sustained the demurrer with leave to amend. On March 5, 1993, plaintiffs filed their second amended complaint (the complaint) in which they restated each cause of action except

---

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.

[1] A sixth plaintiff, Lisa Liversage, was deleted from the second amended complaint, and is not a party to this appeal.

[2] According to the second amended complaint, Steiniger was joined in the mechanic's lien causes of action because he allegedly held a deed of trust on the property. No monetary damages were sought against him. Neither side in this appeal makes any argument directed to Steiniger's presence in the litigation.

that for intentional infliction of emotional distress. Defendants again demurred, and this time the trial court sustained the demurrer without leave to amend. An order of dismissal was entered, and this appeal followed.[3]

### C. *Factual Summary.*

Under the principle that a demurrer admits all well-pleaded factual allegations (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 [197 Cal.Rptr. 783, 673 P.2d 660]), we recite the salient facts as set forth in the complaint.

At the heart of this action is a piece of real property owned by the trust which formerly was the site of the Jane Fonda Workout exercise gym. The trust leased the property to JFE which operated the gym. In July 1991, with the trust's permission, JFE leased the premises to Cyns-Knabben.

The trust, JFE and Cyns-Knabben agreed to improve the property. JFE was to provide financing to Cyns-Knabben who would then be in charge of construction and responsible for paying for materials and laborers. Each defendant was the agent of every other defendant, and the trust, JFE and Cyns-Knabben were all to benefit economically from the project.

In September 1991, in "the course of her agency," Cyns-Knabben employed plaintiff Kean as the construction supervisor for the remodeling project. Kean was to be paid at the rate of $30 per hour; was to be permanently employed after a 60-day probationary period; and was promised an interest in the business if he was hired as general manager of the health club. On October 10, 1991, while construction was ongoing, Cyns-Knabben hired Kean as general manager of the club. The club opened on November 1, 1991. Thereafter, Cyns-Knabben terminated Kean's employment, owing him $16,319.

In the course of her agency, Cyns-Knabben hired plaintiff Harrewyn as Kean's assistant manager. She "was to insure proper payment of all bills pertaining to works of improvement, to keep and file receipts from materialmen; interface with laborers, materialmen, and any party claiming an interest in the property." Harrewyn was paid at the rate of $20 per hour and was to be employed permanently, after a probationary period of 30 days. Harrewyn resigned on November 3, 1991, after the opening of the health club and after Cyns-Knabben failed to pay $2,380 in wages owed to her.

---

[3]Plaintiffs have raised no issue on appeal concerning the demurrers to Kean's and Harrewyn's fraud causes of action or Kamal-Griffin's defamation claim. Any error in connection with the sustaining of the demurrers to those causes of action is, therefore, waived. (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164 [238 Cal.Rptr. 12]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.)

Plaintiff Marin does business as Marin Glass Company and is a duly licensed contractor. On September 10, 1991, he entered into an agreement with Cyns-Knabben to deliver and install mirrors at the health club as part of the remodeling. The agreed upon price was $4,450. On or about November 14, 1991, he installed mirrors and windows at the property. Marin was paid $1,105 of the $4,450 owed to him.

Plaintiff Kim does business as Young Kim Painting Co. and is a duly licensed contractor. On September 24, 1991, he entered into an agreement with Cyns-Knabben to paint the property and furnish all necessary labor and materials. The agreed upon price was $6,300. The work was completed on or about October 25, 1991. Kim was paid $4,000 of the $6,300 owed to him.

Plaintiff Kamal-Griffin, plaintiffs' current attorney of record, is a partial assignee of the claims of Kean and Harrewyn.

Despite demands, neither Cyns-Knabben nor respondents have paid defendants the moneys owed to them.

On December 27, 1991, Kean, Harrewyn, Kim and Marin filed mechanics' liens on the property. Kean filed a second lien on January 8, 1992.

None of the plaintiffs filed a preliminary notice under Civil Code section 3097, and none of the respondents filed a notice of nonresponsibilty under Civil Code section 3094.[4]

---

[4]Civil Code section 3097 provides in part: " 'Preliminary 20-day notice (private work)' means a written notice from a claimant that is given prior to the recording of a mechanic's lien, prior to the filing of a stop notice, and prior to asserting a claim against a payment bond, and is required to be given under the following circumstances: [¶] (a) Except one under direct contract with the owner or one performing actual labor for wages, or an express trust fund described in Section 3111, every person who furnishes labor, service, equipment, or material for which a lien or payment bond otherwise can be claimed under this title, or for which a notice to withhold can otherwise be given under this title, shall, as a necessary prerequisite to the validity of any claim of lien, payment bond, and of a notice to withhold, cause to be given to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section. [¶] . . . [¶] (d) The preliminary notice referred to in subdivisions (a) and (b) shall be given not later than 20 days after the claimant has first furnished labor, service, equipment, or materials to the jobsite. If labor, service, equipment, or materials have been furnished to a jobsite by a claimant who did not give a preliminary notice, that claimant shall not be precluded from giving a preliminary notice at any time thereafter. The claimant shall, however, be entitled to record a lien, file a stop notice, and assert a claim against a payment bond only for labor, service, equipment, or material

## II.

## *Discussion*

Although the 169-paragraph second amended complaint contains 20 causes of action, for purposes of this appeal, our analysis can be divided into 2 subjects: issues relating to the mechanics' liens; and issues relating to monetary claims.

### A. *Mechanic's Lien.*

A mechanic's lien is a claim against the real property upon which a claimant has bestowed labor or furnished materials and is founded in California Constitution, article XIV, section 3. The lien is effected by the filing of a claim of lien within certain time limitations (§§ 3115, 3116) and by meeting other statutory requirements. Because of the unique constitutional command establishing mechanics' liens, "the courts have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637], fn. omitted.) Only certain persons are entitled to file mechanics' liens (§ 3110), and the lien only applies to a "work of improvement" as defined in section 3106.

This appeal raises two issues with respect to the mechanic's lien recorded by plaintiffs: (1) whether plaintiffs' failure to file a preliminary 20-day notice under section 3097 prevents them from foreclosing on the mechanics'

---

furnished within 20 days prior to the service of the preliminary notice, and at any time thereafter."

Civil Code section 3094 provides: " 'Notice of nonresponsibility' means a written notice, signed and verified by a person owning or claiming an interest in the site who has not caused the work of improvement to be performed, or his agent, containing all of the following: [¶] (a) A description of the site sufficient for identification. [¶] (b) The name and nature of the title or interest of the person giving the notice. [¶] (c) The name of the purchaser under contract, if any, or lessee, if known. [¶] (d) A statement that the person giving the notice will not be responsible for any claims arising from the work of improvement. [¶] Within 10 days after the person claiming the benefits of nonresponsibility has obtained knowledge of the work of improvement, the notice provided for in this section shall be posted in some conspicuous place on the site. Within the same 10-day period provided for the posting of the notice, the notice shall be recorded in the office of the county recorder of the county in which the site or some part thereof is located."

Unless otherwise indicated all statutory references are to the Civil Code.

liens, and (2) whether plaintiffs were persons entitled to a lien under section 3110.[5]

### 1. *The Preliminary Notice.*

Although a mechanic's lien itself is not recorded until after the completion of the work in question (§§ 3115, 3116), with certain exceptions, a claimant must serve a "preliminary notice" not later "than 20 days after the claimant has first furnished labor, service, equipment, or materials to the jobsite." (§§ 3097, 3097, subd. (d).) A preliminary 20-day notice is "a necessary prerequisite to the validity of any claim of lien . . . ." (§ 3097, subd. (a).) "A claimant shall be entitled to enforce a lien only if he has given the preliminary 20-day notice (private work) in accordance with the provisions of Section 3097, if required by that section, and has made proof of service in accordance with the provisions of Section 3097.1." (§ 3114.) Strict compliance with section 3097 is required. (*Truestone, Inc.* v. *Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 721 [209 Cal.Rptr. 757].)

■ The complaint does not allege that any of the plaintiffs filed a preliminary notice, and they make no such argument here. Instead, they contend that they were not required to serve such notice. Section 3097, subdivision (a) creates two exceptions to the preliminary notice requirement. No notice is required from: (1) "one under direct contract with the owner", or (2) one performing actual labor for wages. Plaintiffs contend they fall within the first category.

The rationale for excepting those under direct contract with the owner from serving a preliminary notice is that "the owner is generally apprised of potential lien claims by those with whom he deals directly, whereas it is difficult for him to learn of potential liens by those not under direct contract. [Citation.]" (*Truestone, Inc.* v. *Simi West Industrial Park II, supra*, 163 Cal.App.3d at p. 722.)

---

[5]Section 3110 provides: "Mechanics, materialmen, contractors, subcontractors, lessors of equipment, artisans, architects, registered engineers, licensed land surveyors, machinists, builders, teamsters, and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials or appliances or leased equipment for the value of such labor done or materials furnished and for the value of the use of such appliances, equipment, teams, or power whether done or furnished at the instance of the owner or of any person acting by his authority or under him as contractor or otherwise. For the purposes of this chapter, every contractor, subcontractor, sub-subcontractor, architect, builder, or other person having charge of a work of improvement or portion thereof shall be held to be the agent of the owner."

Plaintiffs advance two theories in support of their argument that they are exempt from serving a preliminary notice. First, even though the agreements in question were between plaintiffs and Cyns-Knabben, as a lessee, because respondents had knowledge of the work performed by plaintiffs, plaintiffs were as a matter of law under direct contract with respondents. Second, Cyns-Knabben was the agent of the respondents and therefore the agreements with Cyns-Knabben are in law agreements with respondents as principals.

### a. Respondents' knowledge.

Section 3129 states that every work of improvement constructed, labor performed or materials furnished "with the knowledge of the owner" shall be held to have been "constructed, performed, or furnished at the instance of such owner . . . ." This statute creates a presumption that, where the owner has knowledge of the construction work on its property, the work is done at the instance of the owner and hence "under direct contract with the owner" within section 3097. (*Truestone, Inc.* v. *Simi West Industrial Park II, supra*, 163 Cal.App.3d at p. 722.) Under those circumstances even though the contract for a work of improvement is with a lessee, and not the owner, no preliminary notice is required because of the owner's knowledge. (*Ibid.*) "Where a noncontracting owner has actual knowledge of the improvements being made to his property and fails to avail himself of the mode of exempting his interest from liability for the work provided by [Code of Civil Procedure] section 1183.1, subdivision (b) [now Civil Code section 3094], he is estopped to deny that the work was done at his instance and request. [Citation.] Under such circumstances the claimant has a 'direct contract with the owner' for the purposes of [Code of Civil Procedure] section 1193 [now Civil Code section 3097] and consequently is not required to give the notice prescribed therein. [Citations.]" (*Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.* (1967) 251 Cal.App.2d 347, 353 [59 Cal.Rptr. 587], fn. omitted.)

Plaintiffs do not allege in the complaint nor do they argue here that respondents had actual knowledge of the construction. Rather, they contend that they have sufficiently pled respondents' *constructive* knowledge of the project. Plaintiffs allege that the lease between JFE and the trust permitted JFE and any assignee, such as Cyns-Knabben, to make improvements which would benefit all of the respondents. These lease terms, plaintiffs argue, created a duty on respondents to inquire as to whether Cyns-Knabben had contracted for works of improvement, and reasonable inquiry would have revealed the construction work in question. Respondents' constructive knowledge, they urge, exempts plaintiffs from the requirement to serve a preliminary 20-day notice.

Plaintiffs direct our attention to three cases (*Hayward L. & I. Co.* v. *Orondo Mines* (1939) 34 Cal.App.2d 697 [94 P.2d 380]; *Hammond Lumber Co.* v. *Goldberg* (1932) 125 Cal.App. 120 [13 P.2d 814]; *Raisch* v. *Helfrich* (1920) 47 Cal.App. 494 [190 P. 848]) for the proposition that constructive knowledge on the part of a noncontracting lessor of the work of improvement is sufficient to exempt a claimant from filing a preliminary notice. None of these cases stands for such a rule.

Each of the authorities cited addresses not notice under the preliminary notice statute, section 3097, but notice under the predecessor statute to present section 3094[6] dealing with a noncontracting owner's obligation to post notice of nonresponsibility. (See *Hayward L. & I. Co.* v. *Orondo Mines*, *supra*, 34 Cal.App.2d at p. 698; *Hammond Lumber Co.* v. *Goldberg*, *supra*, 125 Cal.App. at p. 128; *Raisch* v. *Helfrich*, *supra*, 47 Cal.App. at p. 495.) There is no discussion of the preliminary notice statute in any of those cases; nor could there be in that the preliminary notice statute was first enacted in 1959, some 20 years after the most recent of the cases relied upon by plaintiffs. (See 11A West's Ann. Civ. Code (1993 ed.) § 3097, p. 238.)

The cases cited by the parties which have addressed the type of knowledge exempting a claimant from giving preliminary notice all state the rule in terms of actual notice. In *Truestone, Inc.* v. *Simi West Industrial Park II*, *supra*, 163 Cal.App.3d at page 722, the court reversed summary judgment in favor of the owner who argued that the claimant's failure to file a preliminary notice defeated the lien. In concluding there existed a triable issue of fact as to the owner's knowledge of the work, the court stated: "In some cases, even where there is no contractual relationship between the parties, actual knowledge may estop the property owner from asserting the [preliminary] notice requirements of section 3097." (163 Cal.App.3d at p. 722.)

Similarly in *Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.*, *supra*, 251 Cal.App.2d at page 353, the court affirmed a judgment foreclosing a mechanics lien of a claimant who had failed to give a preliminary notice but where the noncontracting owner had actual knowledge of the construction. " 'This result is entirely logical as . . . the owner is already in possession of the type of information otherwise provided by the prelien notice of [Code of Civil Procedure] section 1193 [now § 3097].' [Citation.]" (251 Cal.App.2d at p. 354; see also *Frank Curran Lbr. Co.* v. *Eleven Co.* (1969) 271 Cal.App.2d 175, 186 [76 Cal.Rptr. 753]; *Halspar, Inc.* v. *La Barthe* (1965) 238 Cal.App.2d 897, 898-899 [48 Cal.Rptr. 293].)

Plaintiffs' reliance on notice of nonresponsibility cases in support of their argument that only constructive knowledge need be shown, reveals at the

---

[6]See footnote 4, *ante.*

very least a fundamental confusion between the two statutes. The purpose of the preliminary notice law is to advise a noncontracting owner of construction on its property. The purpose of the notice of nonresponsibility statute (§ 3094) is to require the noncontracting owner to notify the claimant that the owner is not responsible for the work, and that the claimant may not look to the property to secure payment for the construction. If a noncontracting owner has been served with a preliminary notice or otherwise has actual knowledge of the work to be performed on its property, then it is incumbent on the owner to file the notice of nonresponsibility. The notice of nonresponsibility must be filed within 10 days of the owner's knowledge of actual, not intended, construction. (See *Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc., supra,* 251 Cal.App.2d at p. 354.) The preliminary notice, on the other hand, may be served before construction commences, the only temporal limitation being it must be filed no later than 20 days after a claimant's work has begun. (§ 3097, subd. (d).)

The cases relied upon by plaintiffs arose at a time when no preliminary notice was required, and courts were faced with developing a rule of fairness to accommodate the competing interests of contractors and owners and to avoid inequitable results. Since the claimant was under no duty to give formal notice, the focus was necessarily on the extent of the owner's knowledge to trigger the statutory notice of nonresponsibility. In 1959, well after these cases were decided, the Legislature altered the relationship between owner and claimant by enacting then Code of Civil Procedure section 1193, the first preliminary notice statute. The balance struck by section 1193 required written notice to be served by the claimant unless the claimant was under direct contract with the owner. The exception was reasonable because, as noted, an owner would be expected to be apprised of lien claims by one with whom it dealt with directly. (*Truestone, Inc.* v. *Simi West Industrial Park II, supra,* 163 Cal.App.3d at p. 722.)

Shortly after the enactment of section 1193, the courts again were faced with the task of avoiding inequitable results when a claimant not under contract with an owner had furnished labor or materials for construction on the property with the owner's knowledge but had not filed a preliminary notice. The judicially created rule was based on principles of estoppel and carved out an exception to statutory notice when the owner had actual knowledge of the construction. (See, e.g., *Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc., supra,* 251 Cal.App.2d at p. 353; *Halspar, Inc.* v. *La Barthe, supra,* 238 Cal.App.2d at pp. 899-900.) The postpreliminary notice statute cases did not expressly repudiate the earlier constructive knowledge doctrine as applied to the notice of nonresponsibility statute. Indeed, they made no mention at all of the earlier cases cited by plaintiffs. However, at

least one contemporary commentator expressed doubt that the *Scott* and *Halspar* estoppel doctrine should be applied to owners who had only constructive knowledge. "Because of the serious consequences such a determination would have on a property owner, it is likely that the *Halspar* estoppel argument was never intended to be applied in cases of mere constructive knowledge. It would seem proper under *Halspar* that a property owner would have a right to receive written preliminary notice, unless and until he had *actual* knowledge of the information which, under normal circumstances, he would receive in the preliminary notice." (Comment, *The Relationship Between California Code of Civil Procedure Sections 1193 and 1183.1(b) in Light of Halspar, Inc. v. La Barthe* (1969) 21 Hastings L.J. 216, 230-231.)

Following the enactment of the preliminary notice statute, the cases relied on by plaintiffs have been rarely cited at all and never for the proposition that constructive notice will trigger the need for notice of nonresponsibility or to eliminate the preliminary notice requirement.

There is, thus, neither authority, nor is there rationale, for a rule that an owner's constructive knowledge exempts the claimant from serving a preliminary notice. For us to adopt appellants' argument that knowledge of lease provisions constitutes knowledge of actual construction, would seriously undermine the purpose of the preliminary notice statute. Indeed, it would return the law to its pre-1959 state. If in every instance a claimant can avoid the filing of the prelien notice and instead subsequently assert the lessor's constructive knowledge, we would be substituting the express notice afforded by the statute with repeated litigation over whether or not an owner's knowledge of lease terms or other facts was or was not sufficient to put the owner on notice of construction. This would defeat the manifest purpose of the statute.

Accordingly, we conclude that only where the owner has actual knowledge of the construction is a claimant excused from serving a preliminary notice. Plaintiffs failed to allege such knowledge.

    b.   *Cyns-Knabben as Agent of Respondents.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    2.   *Plaintiffs as Persons Entitled to Liens.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 849.

**B.** *Monetary Claims.\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.\*

### *Other Contentions*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV.

### *Disposition*

The judgment is reversed with directions to the trial court to enter an order overruling the demurrers to Kim's first and second causes of action; Marin's first and second causes of action; Kean's second through fifth causes of action; Harrewyn's second through fifth causes of action; and Kamal-Griffin's second and third causes of action. In all other respects, the trial court properly sustained the demurrers without leave to amend.

Appellants shall recover their costs on appeal.

Vogel (C. S.), P. J., and Hastings, J., concurred.

---

\*See footnote, *ante,* page 849.