[No. B139044. Second Dist., Div. Five. Aug. 9, 2001.]

RENTAL EQUIPMENT, INC., Plaintiff and Appellant, v.
McDANIEL BUILDERS, INC., et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the last four paragraphs under DISCUSSION.]

446

## Counsel

Andrade & Associates, Richard B. Andrade and Jennifer Friend for Plaintiff and Appellant.

Rutan & Tucker, Milford W. Dahl, Jr., and Matthew K. Ross for Defendants and Respondents.

OPINION

ARMSTRONG, J.—Rental Equipment, Inc., appeals from a judgment in favor of respondents McDaniel Builders, Inc. and Developers Insurance Company, on its action for foreclosure on a mechanic's lien. We affirm.

SUMMARY

■ A preliminary notice under Civil Code[1] section 3097 is a necessary prerequisite to enforcement of a mechanic's lien. (§ 3097, subd (a).) Such a notice must include "A general description of the labor, service, equipment, or materials furnished, or to be furnished, and an estimate of the total price thereof." (§ 3097, subd. (c)(1).) In this case, the preliminary notices gave estimates of $10,000, but the ensuing mechanic's lien was in the amount of $159,898. The trial court found that the notices were fatally defective because they did not give an estimate of the total price, that is, they did not give a figure which was derived by a rational process, based upon relevant factors.

This case thus presents a question about the meaning of the word "estimate" in section 3097. We agree with the trial court that the statute requires "a derived figure, arrived at by rational analysis," and further find substantial evidence for the trial court finding that the $10,000 estimates here were not so derived. We thus affirm the judgment.

FACTS

In 1997, a group of investors, the O'Donnell Group, contracted with respondent McDaniel to demolish the buildings, foundations, walkways, and curbs on a site in Santa Fe Springs. McDaniel subcontracted with Specialty Steel. Specialty Steel's $75,000 bid was the lowest bid by a significant amount, but McDaniel president Robert McDaniel believed it was reasonable, since Specialty Steel would be allowed to keep the salvaged materials and had already made arrangements to sell those materials. McDaniel's subcontract with Specialty Steel was executed on September 17, 1997. Under the subcontract, Specialty Steel's work was to take no more than six weeks, though the work was actually delayed due to rain.

---

[1]All further statutory references are to that code.

McDaniel erroneously believed that Specialty Steel was licensed. He based this belief on the fact that Specialty Steel's proposal and subcontract agreement bore a license number.

Specialty Steel arranged to rent equipment from appellant and furnished appellant with a credit application. Appellant established a $10,000 line of credit for Specialty Steel. Appellant's equipment began arriving at the project in mid-October. The first piece was an 80-foot lift. Appellant filed two 20-day notices, on November 14 and 24, 1997. Each notice gave an estimate of $10,000.

The November 14 notice identified the equipment that had been or would be furnished as "rental of construction equipment, includes: 80' straight lift." By that date, appellant had billed specialty Steel $8,232. A part of that, $7,800, was for the 80-foot lift. Specialty Steel had by then rented a 60-foot boom, an 80-foot boom, a backhoe, and a trak loader from appellant for the Santa Fe Springs project. The November 24 notice identified a trak loader as the equipment furnished or to be furnished. By that time, appellant had billed Specialty Steel over $23,000.

A Miss Anson of Specialty Steel prepared the preliminary notices. She did not testify at trial. For appellant, Robert Breitenstein testified as the person most knowledgeable about this lien claim, but testified that he did not know how the estimates in the preliminary notices were derived.

McDaniel testified that he examined each preliminary notice as it came in, because "that's the only indication I have from a subtiered supplier of the amount of work and services that they are going to provide . . . by looking at the 20-day notices, that tells me how much exposure there is . . . ." He also testified that if either lien had given a $100,000 estimate, he would have immediately called a meeting with appellant and Specialty Steel to advise appellant of the $75,000 contract price and avoid later problems.

By mid-January, Specialty Steel had substantially completed the project, although a few punch list items, such as removal of trash, remained. Robert McDaniel informed Specialty Steel that it would not be paid until the punch list was completed and until lien releases were obtained from appellant and another supplier. Specialty Steel did not meet those requirements and McDaniel did not make the payment.

Specialty Steel never paid any of appellant's invoices. Appellants filed a mechanic's lien on January 29, 1998. McDaniel's contract with O'Donnell required that he deliver the project free of liens. Ultimately, O'Donnell

required McDaniel to bond around the liens. McDaniel obtained a bond from respondent Developers Insurance for that purpose.

This lawsuit followed.[2] The case went to trial on appellant's cause of action for foreclosure of its claim for a mechanic's lien and was tried to the court. As we have noted, the trial court ruled that the statue required "a derived figure, arrived at by rational analysis," and that while estimate does not mean "precision or exactness," it does mean more than "guess, conjecture, or surmise," and that the statute is a "simple and straightforward call for an estimated total price of its labor, services and equipment." The court further found that the amounts appellant estimated on the preliminary notices was a figure "that was not derived by any rational process, that it had no bearing whatsoever on the actual work done and to be done on the project and that it was, in truth and in fact, made out of whole cloth. The stark factual reality of this case is that [appellant's] dollar figure of $10,000 was not even a guess, much less an estimate."

## DISCUSSION

We begin with appellant's discussion of the trial court's ruling on the meaning of the word "estimate" in section 3097. The ruling is one of law, and we conduct an independent review. (*People v. Duz-Mor Diagnostic Laboratory, Inc.* (1998) 68 Cal.App.4th 654, 660 [80 Cal.Rptr.2d 419].)

In construing a statute, courts must afford words their ordinary common-sense meaning, given "the evident purpose for which the statute was adopted." (*In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].) The dictionary definition of "estimate" is "an approximate computation of the probable cost of a piece of work made by a person undertaking to do the work." (Webster's New World Dict. (3d college ed. 1993) p. 465.) Thus, in ordinary use, an estimate is a figure that has been arrived at through a reasonable and logical attempt to determine the final number. That is the meaning the trial court gave the word here.

This meaning is in accord with the evident purpose of the statute. As appellant argues, the statute is " 'remedial legislation, to be liberally construed for the protection of laborers and materialmen.' " (*Kim v. JF Enterprises* (1996) 42 Cal.App.4th 849, 854 [50 Cal.Rptr.2d 141].) However, " ' "[w]hile the essential purpose of the mechanics' lien statutes is to protect

---

[2]Appellant also sued the O'Donnell Group and another O'Donnell entity, and Specialty Steel and its principal Rick Griffey. Appellant later dismissed the O'Donnell defendants. Griffey and Specialty Steel defaulted, and judgment against them was entered in the amount of $159,898.

those who have performed labor or furnished material towards the improvement of the property of another [citation], inherent in this concept is a recognition also of the rights of the owner of the benefited property. It has been stated that the lien laws are for the protection of property owners as well as lien claimants." ' "[3] (*R. D. Reeder Lathing Co. v. Allen* (1967) 66 Cal.2d 373, 379 [57 Cal.Rptr. 841, 425 P.2d 785].) As McDaniel's testimony here establishes, a real estimate protects both materialmen and property owners, in that it promotes communication based on real factors and the true state of affairs.

Appellant makes a number of arguments purporting to challenge that trial court's ruling on the meaning of the statute. The first of these arguments sets up a straw man. That is, appellant argues that the court erred because the statute requires no more than an estimate—which is what the trial court held. Contrary to appellant's assertion, the trial court did not hold that the statute required an estimate that was "substantially accurate" or contained a binding statement of all rental charges to be incurred throughout the entire project. To the contrary, the court held that "the estimate called for can be in compliance with the statute even though it badly misses the mark with reference to the total charges as finally tallied." We agree.

Appellant also bases an argument on statements the trial court made regarding the possibility that the case law might require a good faith estimate, and what "good faith" might mean in that context. Those comments are without legal significance. They were made during a request for additional briefing, were not incorporated into the court's ruling, and are irrelevant to any issue here. (*Oldis v. La Societe Francaise* (1955) 130 Cal.App.2d 461, 472 [279 P.2d 184].)

Appellant next argues that a preliminary notice need only be reasonable at the time the notice is generated, and that it is reasonable if it is based on the cost of the first piece of equipment rented or the piece of equipment mentioned in the notice. Appellant then concludes that the initial preliminary notice was valid because it accurately estimated the cost of the 80-foot lift listed in the notice, the first piece of equipment rented to Specialty Steel. Appellant thus seeks to read out of the law the requirement

---

[3]However, where the Legislature has specified matters such as the manner of serving notice, deviations from the statute are viewed with extreme disfavor. (*Harold L. James, Inc. v. Five Points Ranch, Inc.* (1984) 158 Cal.App.3d 1, 7 [204 Cal.Rptr. 494].) *Harold L. James* held that a statutory mandate that the notice include a boldface alert to the property owner, designed to make notification of the risk of lien conspicuous, must be strictly followed, and that "minor errors in the body of the notice" must be independently addressed on a case-by-case basis. (*Ibid.*) Here, the trial court found that the error was not minor.

that the estimate relate to the total cost of equipment "furnished, or to be furnished," or to read the law as requiring either an estimate of the cost of equipment already furnished or an estimate of the cost of equipment to be furnished, at the claimant's option. The legal authority appellant cites, section 3097, subdivision (g) and *Blair Excavators, Inc. v. Paschen Contractors, Inc.* (1992) 9 Cal.App.4th 1815 [12 Cal.Rptr.2d 420], does not justify either reading.

Section 3097, subdivision (g) provides that "A person required by this section to give notice . . . need give only one notice . . . with respect to all materials, service, labor, or equipment he or she furnishes for a work of improvement, . . . [¶] If a notice contains a general description required by subdivision (a) or (b) of the materials, services, labor, or equipment furnished to the date of notice, it is not defective because, after that date, the person giving notice furnishes materials, services, labor, or equipment not within the scope of this general description." We see nothing in this subsection which relieves a claimant from the requirement of subdivision (c), that the preliminary notice include a total estimate of materials furnished or to be furnished, or which indicates that the trial court wrongly construed the word "estimate."

*Blair Excavators, Inc. v. Paschen Contractors, Inc., supra,* 9 Cal.App.4th 1815 arose under sections 3091 (since repealed) and 3098, which concerned preliminary notices for public works. The statutes required that those notices state "with substantial accuracy a general description of labor, services, equipment, or materials furnished or to be furnished." (§ 3098, subd (a).) The *Blair Excavators* court considered a contention that a claimant's recovery could not exceed the amount of its contract price, which in that case was also the amount in the notices. The court found that the statutory requirement of substantial accuracy was designed to avoid prejudice to the party claimed against, and that in the absence of prejudice, recovery was not limited to the amount stated in the notice. (*Blair Excavators, Inc.,* at p. 1817.) Nothing in *Blair Excavators* suggests that the trial court erred. The question here was not whether appellant was entitled to recover more than the estimates, but whether appellant made the estimate required by law. We note, too, that through McDaniel's testimony respondents presented evidence that they were prejudiced by the estimates in the notices, which were considerably lower than the actual cost of equipment furnished.

Further, the court's factual finding that the $10,000 estimate was "made up out of whole cloth" means that we would affirm even if appellant's arguments were correct, as long as there was substantial evidence for the

finding. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].)

Appellant argues that there was no substantial evidence, citing the evidence that the first preliminary notice was for more than the amount of the charges which had been incurred for the 80-foot lift and the evidence that six days after the first notice, the amount invoiced was only a little over $10,000. Appellant also cites testimony from Breitenstein which, it contends, establishes that the estimate in the initial preliminary notice was based on the first month's rental of the first piece of equipment rented.

We are not persuaded. As respondents point out, the argument ignores the fact that there was evidence in support of the trial court's decision, such as the evidence that at the time the notices were given, appellant had furnished a substantial amount of equipment to Specialty Steel that was not reflected in the estimates. This is substantial evidence for the court's finding. Further, respondent reads the cited testimony from Breitenstein differently, and argues that it refers to the process by which appellant established a credit rating for a client such as Specialty Steel. The testimony itself is somewhat unclear. We presume in favor of the judgment (*Winograd v. American Broadcasting Co., supra*, 68 Cal.App.4th at p. 632) and adopt respondent's interpretation, but note that even under appellant's reading, the testimony was that the credit department prepared the preliminary notice "based on . . . one month, say on the [first piece of equipment rented to Specialty Steel], for example, that was $8300, so made it $10,000, make it an even dollar amount [$10,000] [$]15,000. Send it off. That's pretty much it." This is not testimony which establishes that appellant made an estimate of materials furnished or to be furnished, as required by the statute.

Foreclosure of a mechanic's lien is an equitable remedy subject to equitable principles (*A. J. Raisch Paving Co. v. Mountain View Sav. & Loan Assn.* (1972) 28 Cal.App.3d 832, 838 [105 Cal.Rptr. 96]), and appellant argues that equity favors reversal, contending that McDaniel created the situation it now complains of by accepting a too-low bid, by failing to record the contract with O'Donnell under section 3124, and by failing to obtain a bond from Specialty Steel. Appellant also argues that McDaniel was paid its contract price, $145,000, for "doing nothing," and will be unjustly enriched if the trial court results stand. The arguments are unconvincing.

The trial court considered and rejected this argument, finding that appellant did not have clean hands since "the number $10,000 as a purported estimate of total price, unfounded in fact and totally unrelated to its legislatively intended purposes, when compared to the lien claim of $160,000, is

shocking to the conscience of this court." Appellant does not mention this holding, let alone provide a reason for us to disturb it.

We note, too, that there was evidence that McDaniel had reason to believe that Specialty Steel's bid was not unreasonably low, and that he was compelled by O'Donnell to refund some of his fee, based in part on appellant's lien.

. . . . . . . . . . . . . . . . . . . . . . . . . . .*

## DISPOSITION

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.

---

*See footnote, *ante*, page 445.