[No. F062924. Fifth Dist. May 22, 2012.]

SHADY TREE FARMS, LLC, Plaintiff and Appellant, v.
OMNI FINANCIAL, LLC, Defendant and Respondent.

## COUNSEL

Gilmore, Wood, Vinnard & Magness, David M. Gilmore and Jennifer J. Panicker for Plaintiff and Appellant.

Law Offices of Michael J. Lampe and Michael P. Smith for Defendant and Respondent.

## OPINION

**LEVY, Acting P. J.**—Appellant, Shady Tree Farms, LLC (Shady Tree), delivered mature trees for the landscaping of a development known as Granite Park. When Shady Tree did not receive payment, Shady Tree recorded a materialman's lien.

In this appeal, Shady Tree challenges the judgment on the pleadings entered in favor of respondent, Omni Financial, LLC (Omni), on Shady

Tree's complaint to foreclose on its materialman's lien. Shady Tree argues the trial court erred in finding that Shady Tree's failure to serve a preliminary 20-day notice under Civil Code section 3097[1] prevented it from foreclosing on the lien.

The trial court correctly granted Omni's motion for judgment on the pleadings. Accordingly, the judgment will be affirmed.

## BACKGROUND

The Granite Park development covered several acres of property and was to be filled with a sports complex, restaurants and entertainment for all ages. The entities developing Granite Park were the Zone Sports Center, LLC (Zone), Granite Park Kids' Foundation (Foundation), JEG Ventures, LLC (JEG), and High Speed Development, LLC.

Omni provided an $18 million construction loan to the Zone that was secured by a deed of trust on the properties owned by the Zone. Omni recorded the deed of trust in January 2006. Omni recorded a modification to this deed of trust in March 2007.

Shady Tree is in the business of growing and selling mature trees for landscaping. On August 11, 2008, Shady Tree entered into a contract with JEG to sell trees to the owners of Granite Park. Shady Tree agreed to deliver 1,879 trees for a price of approximately $3.2 million.

Between August 12, 2008, and November 10, 2008, Shady Tree delivered 959 trees to the Granite Park development. A landscaping company immediately planted 47 of these trees and the remaining trees were placed around the development for planting at a later date. The Granite Park entities assumed ownership and responsibility for the trees but failed to care for them. Eventually, all of the trees died.

Except for a $25,000 deposit, Shady Tree was not paid for the trees. On February 3, 2009, Shady Tree recorded a materialman's lien against JEG, the Zone and the Foundation seeking to recover the balance due of $1,959,244.50 plus interest from September 1, 2008.

On April 2, 2009, Shady Tree filed the underlying action to enforce its materialman's lien. Shady Tree further requested a declaration that its materialman's lien had priority over Omni's deed of trust. Shady Tree also sought to enjoin Omni from foreclosing on its deed of trust pending resolution of the priority issue.

---

[1] All further statutory references are to the Civil Code.

In February 2009, Omni recorded a notice of default against the Zone asserting that the Zone owed Omni over $21 million. In June 2009, Omni foreclosed and currently owns the property under a trustee's deed.

Omni, along with defendant City of Fresno, filed a motion to remove Shady Tree's materialman's lien and expunge the lis pendens. Omni asserted that Shady Tree could not demonstrate the probable validity of its lien because Shady Tree was required to, and did not, serve a preliminary 20-day notice. The trial court agreed and granted the motion.

Thereafter, Omni moved for judgment on the pleadings. Omni argued that Shady Tree could not prevail on its cause of action for declaratory relief with regard to the priority of its lien because the lien had been removed. Omni further asserted that Shady Tree could not prevail on its cause of action to enjoin the foreclosure because Omni had already foreclosed. Shady Tree did not oppose the motion and judgment was entered in Omni's favor.

## DISCUSSION

Shady Tree argues that it was not required to give a preliminary 20-day notice to Omni before filing its materialman's lien and therefore the trial court erred in removing its lien and granting judgment on the pleadings based on Shady Tree's failure to serve such notice.

A mechanic's lien is a claim against the real property upon which the claimant has bestowed labor or furnished materials. (*Kim v. JF Enterprises* (1996) 42 Cal.App.4th 849, 854 [50 Cal.Rptr.2d 141] (*Kim*).) A mechanic's lien is perfected by filing a claim of lien within certain time limitations and by meeting other statutory requirements. (*Ibid.*) One such statutory requirement is the service of a preliminary 20-day notice. (§ 3097.)

The mechanics' lien law is mandated by the California Constitution. (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 808 [132 Cal.Rptr. 477, 553 P.2d 637].) Due to this unique constitutional command, "the courts have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." (*Id.* at pp. 826–827, fn. omitted.) Nevertheless, this liberal construction rule may not be applied to frustrate the Legislature's manifested intent to exact strict compliance with the preliminary notice requirement. (*Harold L. James, Inc. v. Five Points Ranch, Inc.* (1984) 158 Cal.App.3d 1, 5 [204 Cal.Rptr. 494].) The Legislature " 'imposed the notice requirements for the concurrently valid purpose of alerting owners and lenders to the fact that the property or funds involved might be subject to claims arising from contracts to which they were not parties and would otherwise have no knowledge.' " (*Ibid.*)

A mechanic's lien itself is not recorded until after the completion of the work in question. (§§ 3115, 3116; *Kim, supra,* 42 Cal.App.4th at p. 855.) However, with certain exceptions, a claimant must serve a preliminary 20-day notice "not later than 20 days after the claimant has first furnished labor, service, equipment, or materials to the jobsite." (§ 3097, subd. (d).) If a preliminary 20-day notice is required, a claimant shall be entitled to enforce a lien only if that preliminary 20-day notice has been given. (§ 3114.)

It is undisputed that Shady Tree did not serve a preliminary 20-day notice on Omni. Shady Tree argues that it was not required to do so under section 3097 because it was under direct contract with the owner.

Section 3097 provides, in relevant part:

" 'Preliminary 20-day notice (private work)' means a written notice from a claimant that is given prior to the recording of a mechanic's lien . . . and is required to be given under the following circumstances:

"(a) Except one under direct contract with the owner . . . , every person who furnishes labor, service, equipment, or material for which a lien . . . otherwise can be claimed under this title . . . , shall, as a necessary prerequisite to the validity of any claim of lien, . . . cause to be given to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section.

"(b) Except the contractor, . . . all persons who have a direct contract with the owner and who furnish labor, service, equipment, or material for which a lien . . . otherwise can be claimed under this title, . . . shall, as a necessary prerequisite to the validity of any claim of lien, . . . cause to be given to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section."

■ Shady Tree is correct that it was not required to give Omni a preliminary 20-day notice under section 3097, subdivision (a). The record supports Shady Tree's position that it was under direct contract with the owner of Granite Park and thus it was not required to give notice to the owner, original contractor, or lender under that subdivision. However, having had a direct contract with the owner and having furnished materials, Shady Tree falls within the category of persons required to give a preliminary notice to the construction lender under section 3097, subdivision (b).

Shady Tree disagrees with this interpretation of section 3097, subdivision (b). Rather, Shady Tree posits that section 3097, subdivision (b) should

be read as an alternative to section 3097, subdivision (a), and thus, if either section is met, a party is exempt from giving the 20-day preliminary notice. Alternatively, Shady Tree argues that having a direct contract with the owner exempts it from giving notice to anyone. In other words, having had a direct contract with Granite Park to provide trees makes Shady Tree a contractor within the meaning of section 3097, subdivision (b).

In construing section 3097, we begin with its plain language, affording the words their ordinary and usual meaning. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049].) At the same time, we must give meaning to every word of the statute, if possible, and avoid a construction that makes any word surplusage. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Although, as remedial legislation, mechanic's lien laws are to be liberally construed for the protection of laborers and materialmen, we nevertheless must apply common sense to the language at issue and interpret the statute to make it workable and reasonable. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122 [29 Cal.Rptr.3d 262, 112 P.3d 647].)

"As has been noted, '[t]he Mechanic's Lien Law often is inartfully drawn and leaves much room for doubt . . . .' " (*Kodiak Industries, Inc. v. Ellis* (1986) 185 Cal.App.3d 75, 82, fn. 3 [229 Cal.Rptr. 418] (*Kodiak Industries*).) Subdivisions (a) and (b) of section 3097 fall into this "inartfully drawn" category. Nevertheless, we must interpret section 3097 in such a way as to avoid making either subdivision "surplusage."

If we were to adopt Shady Tree's position and find that if a materialman is excepted under *either* subdivision (a) or (b) of section 3097, that materialman is not required to give a preliminary 20-day notice as a prerequisite to foreclosing on its lien, all of section 3097, subdivision (b), would be surplusage. The persons who have a direct contract with the owner and who furnish labor, service, equipment, or material would never be required to give a preliminary 20-day notice to the construction lender or reputed construction lender as is required under section 3097, subdivision (b), because they would always be exempt under section 3097, subdivision (a).

■ Contrary to Shady Tree's argument, the interpretation that requires a materialman to meet the requirements under both subdivisions to be exempt does not render section 3097, subdivision (a), superfluous. Subdivision (b) pertains to the construction lender or reputed construction lender only, whereas subdivision (a) pertains to the owner or reputed owner, original contractor or reputed contractor, and the construction lender or reputed construction lender. While there is some overlap regarding the construction

lender, applying both subdivisions to one materialman does not cause either subdivision to be entirely surplusage.

■ Additionally, the ordinary and usual meaning of the words used in section 3097 supports requiring that both subdivisions be met. Section 3097 states that a preliminary 20-day notice "is required to be given *under the following circumstances*." (Italics added.) The plain meaning of the phrase "under the following circumstances" is that all of the following circumstances apply, as opposed to *one of the following circumstances* or *any of the following circumstances*.

■ Shady Tree's alternative construction, i.e., that as a person who has a direct contract with the owner it is a "contractor" under section 3097, subdivision (b), is also untenable. Subdivision (b) requires that "all persons who have a direct contract with the owner," *except the contractor*, must give a 20-day preliminary notice to the construction lender or reputed construction lender. If every person who had "a direct contract with the owner" also qualified as "the contractor," section 3097, subdivision (b), would be meaningless. The exception for the contractor would subsume the category of persons who were required to give a preliminary 20-day notice to the construction lender. Thus, subdivision (b) would never come into effect.

Further, section 3097, subdivision (b), refers to *the* contractor rather than *a* contractor. The use of "the" indicates a single person, i.e., the prime or general contractor for the project, not multiple contractors, i.e., the subcontractors or others with direct contracts with the owner.

Other courts that have had occasion to analyze the term "contractor" as used in section 3097, subdivision (b), have concluded that "the contractor" refers to the general or prime contractor. In *Kodiak Industries*, the court noted that the exception of "the contractor" in section 3097, subdivision (b), was "puzzling" but that it presumably referred to someone other than " 'all persons who have a direct contract with the owner.' " (*Kodiak Industries, supra*, 185 Cal.App.3d at p. 82, fn. 3.) Although undefined, "contractor" in this context "has sensibly been construed to mean the general or prime contractor for the entire project." (*Ibid.*) Similarly, the court in *Westfour Corp. v. California First Bank* (1992) 3 Cal.App.4th 1554, 1561 [5 Cal.Rptr.2d 394], adopted this construction of "the contractor" in section 3097, subdivision (b). The court summarized section 3097 as requiring "all persons other than a person who is both 'under direct contract with the owner' and 'the contractor' to give preliminary notice to a construction lender within 20 days after commencing work on a project. The term 'the contractor' in section 3097 has been interpreted to mean 'the general or prime contractor for the entire project.' " (*Westfour Corp., supra*, at p. 1561.)

■ In sum, construing section 3097, subdivisions (a) and (b), so as to give the words their ordinary and usual meaning and to avoid surplusage, we conclude that Shady Tree was required to give Omni a preliminary 20-day notice. Subdivisions (a) and (b) are not alternatives. If either one is met the 20-day notice must be given. Further, persons who have a direct contract with the owner are not "the contractor" under section 3097, subdivision (b), based solely on that relationship.

Shady Tree did not give Omni the preliminary 20-day notice as it was required to do under section 3097. Thus, Shady Tree cannot enforce its lien against Omni. Accordingly, the trial court correctly granted Omni judgment on the pleadings. Omni was entitled to judgment as a matter of law.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Gomes, J., and Detjen, J., concurred.