Filed 9/25/14  Travelers Casualty etc. v. Berger Foundation CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>THE H.N. & FRANCES C. BERGER FOUNDATION,<br><br>    Defendant and Respondent. | G049802<br><br>(Super. Ct. No. INC085539)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Randall Donald White, Judge.  Reversed.

Anderson, McPharlin & Conners, Mark E. Aronson and Vanessa S. Davila for Plaintiff and Appellant.

Hennelly & Grossfeld and Ronald K. Giller for Defendant and Respondent.

\*　　　　　\*　　　　　\*

INTRODUCTION

Travelers Casualty & Surety Company of America (Travelers) was substituted into this action as real party in interest to assert plaintiff Granite Construction Company's (Granite) claim for foreclosure of a mechanic's lien. Travelers appeals from the judgment entered after the trial court granted defendant The H.N. & Frances C. Berger Foundation's (Berger) motion for summary judgment. We reverse. Triable issues of material fact exist as to whether Granite's mechanic's lien was effective under Civil Code former section 3097.[1] The trial court therefore erred by granting summary judgment. In our opinion, we address the most significant triable issues of material fact in parts III., IV., and V. of the Discussion section.

SUMMARY OF THE PARTIES' EVIDENCE

In 2003, Berger, a charitable foundation, acquired a 446-acre tract of land in Palm Desert. Berger developed part of the property into a fully functional 240-acre golf course and chose not to develop the remainder of the property. Berger gifted the golf course to the Bob Hope Desert Classic golf tournament and sought a developer to purchase the remainder of the property.

In September 2006, Desert Gold Ventures, LLC (Desert Gold), was interested in acquiring the property from Berger to develop a resort named the Delfino Resort. Part of Desert Gold's plan was to contract with Granite, a contractor, to begin the development of the property by making improvements on the sides of Varner Road located on the property. At an unspecified date, but no later than November 7, 2006, Berger dedicated Varner Road to the County of Riverside (the County).

---

[1] Title 15 of part 4 of division 3 of the Civil Code, addressing mechanic's liens, was repealed as of July 1, 2012. (Stats. 2010, ch. 697, § 16.) All further statutory references are to former sections of the Civil Code unless otherwise specified.

2

Copies of e-mails exchanged between representatives of Granite, Desert Gold, and CalVest Industries (CalVest) (CalVest was later engaged to serve as construction manager of the project) included an e-mail by Attorney Sara D. Harris of Rutter Hobbs & Davidoff Incorporated (representing Desert Gold), dated September 26, 2006, stating: "I spoke to the Berger Foundation's attorney regarding the unlikely event the buyer does not acquire the property and whether the seller would assume the obligations of the 'Owner' under the Granite contract. The response from the Berger Foundation is 'no'. They believe that the contract price is too high. Apparently, the Berger Foundation is acting as the contractor and retaining subcontractors to do the work on their portion of Varner Road. As stated in an email I received from the seller's attorney, the Berger Foundation will 'indicate to Granite that they are allowing the roadwork to commence prior to Desert Gold closing of the property but this could not involve any undertaking by the Foundation to honor Desert Gold's contract with Granite.' [¶] I will check with the Foundation's counsel to see if the Berger Foundation will agree to assume the responsibility of paying Granite for any work performed on the property prior to date the Granite contract is terminated due [to] the failure of escrow to close on the purchase of the property by Desert Gold."[2]

In October 2006, Desert Gold entered into an agreement with Granite, in which Granite agreed to perform road and water improvement work along the approximately one-mile stretch of Varner Road (the Granite contract). The work included widening Varner Road from two lanes to six lanes (which required curb, gutter, asphalt, sidewalk, and storm drain work) and installing a 24-inch water line along the length of the road and a domestic water crossing underneath the road. The amount of the

_____

[2] Among raising a host of other evidentiary objections in support of its motion for summary judgment, Berger argued in the trial court that the e-mail exchange, cited *ante*, was unauthenticated and inadmissible. The trial court overruled all evidentiary objections. Berger does not argue on appeal that the trial court abused its discretion with regard to any evidentiary objection rulings.

3

Granite contract was $8,225,000. Also in October, Desert Gold contracted with CalVest to provide Desert Gold construction management services at the project.

Although Berger was still the owner of the property at the time Desert Gold and Granite entered into the Granite contract, Berger was not a party to that agreement. The record shows the normal chronology of events for a construction project of that kind did not occur because there was some time pressure in completing the Varner Road construction. The Bob Hope Desert Classic golf tournament, referred to by one witness as the "king of the desert," was scheduled to be held on January 17, 2007. Varner Road, therefore, needed to be widened and otherwise improved to allow better public access to the event.

On November 7, 2006, the County approved a final tract map of the property, which divided the property into lots A through C and 1 through 10. Varner Road was identified on the tract map as lot A; lot A adjoined various lots in the approved tract. The tract map also reflected that Berger had unconditionally dedicated lot A to the County.

Granite's accounting clerk, Kim George, prepared two preliminary 20-day notices, dated December 1, 2006. The preliminary 20-day notices identified Scripps Investments & Loans, Inc. (Scripps), as the lender, and Desert Gold as the "owner/reputed owner." The notices also estimated $8,225,000 as the total price of labor, services, equipment, or materials under the Granite contract. George prepared the notices based on information Granite had received from CalVest and Desert Gold. George did not review any public records to confirm Granite's information; it was not Granite's practice to do so. An e-mail containing "preliminary notice information" (capitalization omitted), which Tim Reynolds of Granite had received from Michael Oliphant of CalVest, identified Desert Gold as the owner of the property. A document, on which Granite also relied, that had a Delfino Resort logo on it and was entitled "Preliminary

4

Lien Information Contact Information," identified Berger and Scripps as the lenders, and Desert Gold as the owner.

George had "no idea" why Berger was not identified on the request for preliminary notice information form that Granite had prepared for the purpose of identifying whom it would serve with a preliminary 20-day notice for the project. George thought it "odd" and "d[id]n't make sense" that Berger was not listed on that document.

Granite's preliminary 20-day notices were thereafter served by certified mail to Scripps and Desert Gold, as confirmed by returned receipts, copies of which are contained in our record. It was not Granite's practice to prepare declarations of service with regard to its service of preliminary 20-day notices. Berger was neither identified on, nor served with, the preliminary 20-day notices.

On December 7, 2006, a grant deed transferring the property from Berger to Desert Gold was executed but was not recorded until January 4, 2007. In opposing Berger's motion for summary judgment, Travelers did not dispute that Desert Gold acquired the property from Berger on January 4, 2007.

Reynolds, Granite's project manager and senior estimator, testified at his deposition that in the normal course of such improvement work on public land, Granite would obtain an encroachment permit from the County before it could begin work on Varner Road. Oliphant testified, however, that construction began on December 11, 2006, before the County issued an encroachment permit on December 20, because "everybody," including the County and Berger, was "pushing" to get the work done in time for the Bob Hope Desert Classic golf tournament. The improvements to Varner Road "were to benefit all of the lots" in the tract. Travelers issued payment and performance bonds for the road and water improvement work on Varner Road.

Granite began the work by clearing and grading along Varner Road, removing a chain-link fence, and staking the area. Materials were staged and stored on

5

the premises for sewer and water lines. Reynolds testified at his deposition that Granite was not concerned whether Desert Gold owned the property before construction began because "the County wouldn't let me go to work unless there was an agreement to work on that property." Oliphant (employed by construction manager, CalVest) testified in his deposition that there was no agreement Desert Gold had to first acquire the property before construction began. He testified this was a "special circumstance" because work should not have begun until two weeks after the County had issued the December 20, 2006 encroachment permit. He also testified construction proceeded "at owner's risk."

At the commencement of the work on Varner Road, Berger's president, Ron Auen, and Doug Vance, Berger's vice-president of real estate, were seen at the property monitoring the work; they never objected to the work or told the workers to stop or leave. Vance contacted Cove Electric to mark Berger's private underground fiber optic line before the commencement of construction. A portable water tower that held 12,000 gallons of water was erected on the property for the project. The water tower was visible from parts of the freeway and Varner Road. Vance's brother's company, Dan's Equipment, was a contractor in the commencement of work at the property; Dan's Equipment supplied water and water trucks.

Berger financed Desert Gold's purchase of the property, and Berger thus became the beneficiary of a deed of trust encumbering lots 3, 4, 6 through 9, B, and C of the property. The trust deed was recorded on January 4, 2007. Berger intended that its trust deed would be first in priority. Berger would not have provided financing if it had not been secured by a first trust deed.

At some unspecified point in time, Desert Gold stopped making payments; Berger foreclosed on its trust deed and reacquired the property. Desert Gold apparently disappeared from the picture.

On February 11, 2008, Granite stopped performing under the Granite contract because it had not been paid. As Granite was listed on the encroachment permit,

6

the County required Granite to conduct some continuing maintenance on the uncompleted work to make sure the area remained safe until the work was completed.

On February 22, 2008, Granite served a second preliminary 20-day notice, this time on Berger, which identified Berger as the lender. The notice contained a $2,480,129.49 estimate for the total price of additional labor, equipment, and materials needed for the project. No proof of service was prepared.

On January 15, 2009, Granite recorded a mechanic's lien that encumbered the property now owned, once again, by Berger.

PROCEDURAL HISTORY

I.

GRANITE'S FIRST AMENDED COMPLAINT

In April 2009, Granite commenced this action to, inter alia, foreclose on its mechanic's lien. Granite's first amended complaint, which is the operative complaint in this case, contained a claim for breach of contract against Desert Gold; two claims for common counts against Desert Gold; a claim for foreclosure of the mechanic's lien against Desert Gold, Berger, Top Finance of Arizona, LLC, Dynamic Finance of Arizona, LLC, CalVest, P.M. 10, Inc., Earth Systems Southwest, and GR Underground, Inc.; a claim for action on a payment bond against Travelers and the County; and a claim for violation of Insurance Code section 790.03, subdivision (h) and California Code of Regulations, title 10, section 2695.10 against Travelers.

As to the claim for foreclosure of the mechanic's lien, the first amended complaint alleged that pursuant to section 3097, within 20 days after first furnishing labor, services, equipment, and materials to the jobsite, Granite provided a preliminary 20-day notice. The first amended complaint further alleged: "On January 15, 2009, plaintiff's certified Notice of Claim of Lien in the sum of $5,716,455.33 was duly recorded," and that "[s]aid recordation was within thirty (30) days of recordation of

7

Notice of Completion and within ninety (90) days since completion of the work of improvements or cessation of labor thereon.  On or about April 16, 2009, defendant, Travelers Casualty and Surety Company of America, partially reduced the above referenced mechanics' lien to $2,794,779.92."

## II.

TRAVELERS SUBSTITUTES IN AS PLAINTIFF AS TO GRANITE'S FORECLOSURE OF MECHANIC'S LIEN CLAIM; GRANITE DISMISSES ALL CAUSES OF ACTION OTHER THAN FORECLOSURE OF MECHANIC'S LIEN CLAIM.

In April 2010, Travelers filed a motion for an order substituting Travelers in place of Granite as to Granite's cause of action for foreclosure of its mechanic's lien. Travelers's moving papers explained that Granite and Travelers entered into a settlement agreement in which, inter alia, Granite assigned its claim for foreclosure on the mechanic's lien to Travelers.  In September 2010, the trial court granted Travelers's motion and ordered that Travelers, as assignee of Granite, "is hereby substituted in as the real party in interest in place of Granite as to the operative Complaint's fourth cause of action for foreclosure of mechanic's lien."  (Some capitalization omitted.)  In April 2011, Granite filed a request for dismissal of all causes of action contained in the first amended complaint except for the fourth cause of action for foreclosure of the mechanic's lien. The court clerk entered the dismissal accordingly.

## III.

THE TRIAL COURT DENIES TRAVELERS'S FIRST MOTION FOR SUMMARY ADJUDICATION.

In March 2011, Travelers filed a motion for summary adjudication as to the foreclosure of the mechanic's lien claim, on the ground:  "Travelers is entitled to judgment in its favor as to the fourth cause of action for foreclosure of mechanic's lien as Granite:  (1) supplied a preliminary notice; (2) timely recorded a mechanics lien; and (3) has priority over the deeds of trust held by the lenders which were recorded after the

8

commencement of work of improvement on the subject real property." (Some capitalization omitted.)

The trial court denied the motion for summary adjudication, stating triable issues of material fact existed as to the following: "Whether Travelers paid and discharged the entire debt of Granite; whether subrogation of Granite[']s rights to Travelers would work an injustice as to Berger[;] whether Granite stopped work as early as February 2008 (which would indicate that the mechanics lien was recorded too late pursuant to Civ. Code 3115); whether Granite[']s work stopped on January 31 2009 (which would indicate that Granite recorded the mechanics lien prematurely on January 15 2009 in violation of Civ. Code 3115); whether Granite commenced work on October 20 2006; and the reasonable value of the work and materials."

IV.

THE TRIAL COURT DENIES BERGER'S MOTION FOR SUMMARY JUDGMENT ON THE GROUND TRIABLE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER BERGER HAD KNOWLEDGE OF THE COMMENCEMENT OF THE VARNER ROAD IMPROVEMENT WORK AND WHETHER BERGER CAUSED THAT WORK TO COMMENCE.

In November 2011, Berger filed a motion for summary judgment as to the foreclosure of the mechanic's lien claim on the grounds, "there is no triable issue of fact and that Berger is entitled to a judgment as a matter of law as to the foreclosure of mechanics' lien claim because under Civil Code Section 3128, the mechanics' lien that Travelers seeks to enforce did not attach to the property that it purports to encumber. The mechanics' lien did not attach to the property because Berger owned the property when work commenced and did not cause the work to be done."

On February 14, 2012, the trial court denied the motion for summary judgment on the ground, "[t]riable issues of fact exist as to whether the Berger Foundation had knowledge of commencement of the offsite improvement work and whether it caused the work to commence."

9

V.

THE TRIAL COURT GRANTS BERGER'S MOTION FOR SUMMARY JUDGMENT;
TRAVELERS APPEALS.

In January 2012, Berger filed a motion for summary judgment on the ground, "there is no triable issue of fact and that Berger is entitled to a judgment as a matter of law as to the foreclosure of mechanics' lien cause of action. The mechanics' lien that Travelers seeks to enforce is invalid because Granite did not serve Berger with a 20-day preliminary notice as required by Civil Code Sections 3097, 3097.1 and 3114."

The trial court granted Berger's motion for summary judgment on the ground, "Granite failed to serve Berger with a 20 day preliminary notice as required (Civil Code 3097 3097.1 and 3114). Granite was not exempt from this requirement on the grounds that it had a direct contract with the reputed owner of the property[,] that there was an implied contract between Berger and Granite[,] or that Granite acted in good faith." The court overruled the parties' evidentiary objections; neither party challenges the court's ruling on any evidentiary objections in this appeal.

In May 2012, judgment was entered in favor of Berger and against Travelers as the real party in interest to Granite's claim. Travelers appealed.

DISCUSSION

I.

STANDARD OF REVIEW

We review orders granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

## II.

SUMMARY OF THE APPLICABLE LAW GOVERNING PRELIMINARY 20-DAY
NOTICES AND MECHANIC'S LIENS

"A mechanic's lien is a claim against the real property, which may be filed if a claimant has provided labor or furnished materials for the property and has not been paid. (*Kim v. JF Enterprises* (1996) 42 Cal.App.4th 849, 854 . . . .) The mechanic's lien derives from the California Constitution and 'courts have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.'" (*Brewer Corp. v. Point Center Financial, Inc.* (2014) 223 Cal.App.4th 831, 839, quoting *Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 826-827.)

A mechanic's lien "is effected by the filing of a claim of lien within certain time limitations (§§ 3115, 3116) and by meeting other statutory requirements." (*Kim v. JF Enterprise* (1996) 42 Cal.App.4th 849, 854.) Under section 3097, "[s]ervice of a preliminary 20-day notice is required to enforce a mechanic's lien or stop notice claim. [Citations.] A preliminary notice must be served within 20 days after the claimant has begun providing labor, services, equipment, or material for which a mechanic's lien or stop notice claim will be made. [Citation.] The Legislature imposed the notice requirement to alert property owners and lenders 'to the fact that the property or funds involved might be subject to claims arising from contracts to which they were not parties and would otherwise have no knowledge.' [Citation.] The Legislature intended 'to exact strict compliance with the preliminary notice requirement.' [Citations.]" (*Brewer Corp. v. Point Center Financial, Inc.*, *supra*, 223 Cal.App.4th at p. 847.)

Section 3097 provided in relevant part: "'Preliminary 20-day notice (private work)' means a written notice from a claimant that is given prior to the recording of a mechanic's lien, prior to the filing of a stop notice, and prior to asserting a claim against a payment bond, and is required to be given under the following circumstances:

11

[¶] (a) Except one under direct contract with the owner . . . , every person who furnishes labor, service, equipment, or material [to a work of improvement] . . . shall, as a necessary prerequisite to the validity of . . . a notice to withhold, cause to be given to the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section.  [¶] (b) Except the contractor . . . , all persons who have a direct contract with the owner and who furnish labor, service, equipment, or material [to a work of improvement] . . . shall, as a necessary prerequisite to the validity of . . . a notice to withhold, cause to be given to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section."  Section 3095 defined the term "'[o]riginal contractor'" as "any contractor who has a direct contractual relationship with the owner."

"Although a mechanic's lien itself is not recorded until after the completion of the work in question (§§ 3115, 3116), with certain exceptions, a claimant must serve a 'preliminary notice' not later 'than 20 days after the claimant has first furnished labor, service, equipment, or materials to the jobsite.'  (§§ 3097, 3097, subd. (d).)  A preliminary 20-day notice is 'a necessary prerequisite to the validity of any claim of lien . . . .'  (§ 3097, subd. (a).)  'A claimant shall be entitled to enforce a lien only if he has given the preliminary 20-day notice (private work) in accordance with the provisions of Section 3097, if required by that section, and has made proof of service in accordance with the provisions of Section 3097.1.'  (§ 3114.)  Strict compliance with section 3097 is required.  (*Truestone, Inc.* [*v.*] *Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 721 . . . .)"  (*Kim v. JF Enterprises*, *supra*, 42 Cal.App.4th at p. 855.)

Here, Travelers sought to foreclose on Granite's mechanic's lien to recover money for the services and materials provided by Granite in its construction work on Varner Road, which was property owned by the County, a public entity.  Although "[a] mechanics lien is not available against public property," even when a private developer

12

performs construction on public property, "[p]rivate property that is directly adjacent to and benefited by public works, such as streets, storm drains, and curbs, also can be subject to a mechanics lien on a public works project." (Cal. Mechanics Liens and Related Construction Remedies (Cont.Ed.Bar 4th ed. 2013) § 4.5, pp. 319, 320, citing *North Bay Construction, Inc. v. City of Petaluma* (2006) 143 Cal.App.4th 552 and *Sukut-Coulson, Inc. v. Allied Canon Co.* (1978) 85 Cal.App.3d 648.)

Furthermore, section 3128 authorized the attachment of liens to adjacent property: "The liens provided for in this chapter shall attach to the work of improvement and the land on which it is situated together with a convenient space about the same or so much as may be required for the convenient use and occupation thereof, if at the commencement of the work or of the furnishing of the materials for the same, the land belonged to the person who caused such work of improvement to be constructed, but if such person owned less than a fee simple estate in such land then only his interest therein is subject to such lien, except as provided in Section 3129." (See *Forsgren Associates, Inc. v. Pacific Golf Community Development LLC* (2010) 182 Cal.App.4th 135, 150.) The parties do not dispute that Granite's mechanic's lien, if otherwise valid, could attach to the property adjacent to Varner Road.

III.

ALTHOUGH GRANITE DID NOT HAVE A DIRECT CONTRACTUAL RELATIONSHIP WITH BERGER, AND DID NOT SERVE BERGER WITH A PRELIMINARY 20-DAY NOTICE IN 2006, A TRIABLE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER BERGER HAD ACTUAL KNOWLEDGE OF THE COMMENCEMENT OF THE CONSTRUCTION SO AS TO EXCUSE GRANITE FROM THAT REQUIREMENT.

It is undisputed Granite did not serve Berger, as owner of the property adjacent to Varner Road or in any capacity, with a preliminary 20-day notice at the commencement of the construction in December 2006. "Section 3097, subdivision (a) creates two exceptions to the preliminary notice requirement. No notice is required from: (1) 'one under direct contract with the owner', or (2) one performing actual labor for

13

wages." (*Kim v. JF Enterprises*, *supra*, 42 Cal.App.4th at p. 855.)  "The rationale for excepting those under direct contract with the owner from serving a preliminary notice is that 'the owner is generally apprised of potential lien claims by those with whom he deals directly, whereas it is difficult for him to learn of potential liens by those not under direct contract.  [Citation.]'  [Citation]."  (*Ibid.*)

In *Kim v. JF Enterprises*, *supra*, 42 Cal.App.4th at page 856, the appellate court explained:  "Section 3129[3] states that every work of improvement constructed, labor performed or materials furnished 'with the knowledge of the owner' shall be held to have been 'constructed, performed, or furnished at the instance of such owner . . . .'  *This statute creates a presumption that, where the owner has knowledge of the construction work on its property, the work is done at the instance of the owner and hence 'under direct contract with the owner' within section 3097.*  [Citation.]"  (Italics added.)

Therefore, "'[w]here a noncontracting owner has actual knowledge of the improvements being made to his property and fails to avail himself of the mode of exempting his interest from liability for the work provided by . . . section 3094 . . . , he is estopped to deny that the work was done at his instance and request.  [Citation.]  Under

---

    3 Section 3129 provided in full:  "Every work of improvement constructed upon any land and all work or labor performed or materials furnished in connection therewith with the knowledge of the owner or of any person having or claiming any estate therein shall be held to have been constructed, performed, or furnished at the instance of such owner or person having or claiming any estate therein and such interest shall be subject to any lien recorded under this chapter unless such owner or person having or claiming any estate therein shall give a notice of nonresponsibility pursuant to Section 3094."  Section 3094 defined "'[n]otice of nonresponsibility'" as a "written notice, signed and verified by a person owning or claiming an interest in the site who has not caused the work of improvement to be performed, or his agent," and which contains specified information set forth in the statute.  The notice of nonresponsibility must be provided "[w]ithin 10 days after the person claiming the benefits of nonresponsibility has obtained knowledge of the work of improvement" and "shall be posted in some conspicuous place on the site."  (§ 3094.)  There is no evidence any party provided a notice of nonresponsibility in this case.

14

such circumstances the claimant has a "direct contract with the owner" for the purposes of . . . section 3097 . . . and consequently is not required to give the notice prescribed therein. [Citations.]' [Citation.]" (*Kim v. JF Enterprises*, *supra*, 42 Cal.App.4th at p. 856.)

The appellate court in *Kim v. JF Enterprises*, *supra*, 42 Cal.App.4th at page 859, rejected the plaintiffs' argument that the owners' constructive knowledge was sufficient to excuse the plaintiffs' compliance with section 3097. The court concluded, "only where the owner has actual knowledge of the construction is a claimant excused from serving a preliminary notice." (*Kim v. JF Enterprises*, *supra*, at p. 859.)

In granting Berger's motion for summary judgment on the ground Granite failed to serve Berger with a preliminary 20-day notice, the trial court stated in part, "Granite was not exempt from this requirement on the grounds that it had a direct contract with the reputed owner of the property[,] that there was an implied contract between Berger and Granite[,] or that Granite acted in good faith."

Granite, however, produced evidence in opposition to Berger's motion for summary judgment that would support a finding Berger had actual knowledge of the construction work along Varner Road, thereby triggering the presumption the work was done at the instance of Berger and "'under direct contract with'" Berger. (*Kim v. JF Enterprises*, *supra*, 42 Cal.App.4th at p. 856.) By virtue of this evidence, Berger may be estopped from arguing the requirements of the statute were not met. That evidence includes: (1) the e-mails, dated September 26, 2006, documenting Berger's reluctance, as expressed by one of its attorneys, to become a party to the Granite contract, and, thus, Berger's awareness of discussions leading up to the Granite contract; (2) testimony that the commencement of work on Varner Road was expedited at "everybody's" insistence, including Berger's, with the goal of facilitating public access to the Bob Hope Desert Classic golf tournament to be held on January 17, 2007; (3) testimony regarding the presence of Berger executives, Auen and Vance, at the commencement of work on

15

Varner Road and frequent visits monitoring the progress of the work; (4) Vance's assistance in marking a fiber optic line to facilitate construction on Varner Road; (5) the visible grading and staging activities on Varner Road and adjoining property; (6) the erection of a 12,000-gallon portable water tower on the property for use in construction efforts, which was visible from parts of the freeway and Varner Road itself; and, to a lesser extent, (7) Vance's brother's role at the commencement of construction activities as a contractor providing water supply services to facilitate construction on the property adjoining Varner Road.

Berger argues some of the deposition testimony of witnesses, which was produced by Travelers in opposition to the motion for summary judgment, was inconsistent and vague regarding timing of events and personal knowledge. For example, Oliphant testified at his deposition, as follows: "[W]hen we started on December 14, Ron Auen and Doug Vance were on the property every day during our improvements. So they—they never objected and said, 'You guys have to stop, leave. We don't want you to'—'We don't want you to not work—or work here,' any—any of that. They were quite helpful." Oliphant also testified "the Bergers" were on the jobsite "quite often" early in the morning as Auen was "an early bird, and so he came out early throughout the entire process." Oliphant testified that his own schedule did not "always coincide to the early visits" and so he did not see Auen every time he came; Oliphant's superintendent, however, told him that he saw Auen numerous times. Oliphant stated that he could not recall if he personally saw Auen and Vance onsite between December 11, 2006 and January 4, 2007.

Oliphant also offered inconsistent testimony regarding the issue of Vance's assistance in marking the fiber optic line. At one point in his deposition, Oliphant testified that immediately before construction began, he requested Vance's assistance in marking the fiber optic line near the work on Varner Road to make sure it was not hit when digging began. He asked Vance, "can you mark out your fiberoptic line for us

16

because we are going to start." Oliphant also testified he did not "actually recall the conversation to get that line demarked." On the other hand, Vance testified at his deposition that he discussed the fiber optic line with Oliphant after the line had been damaged.

Berger argues that although evidence shows a portable water tower was erected, no evidence shows when the tower was erected. Similarly, sometimes vague and inconsistent deposition testimony was presented as to the timing of the arrival of construction materials and equipment.

That Oliphant and other witnesses provided sometimes inconsistent and vague deposition testimony does not render their testimony ineligible to create a triable issue of material fact as to Berger's actual knowledge of the commencement of construction on Varner Road. It is the province of the jury to reconcile conflicting testimony offered by Oliphant and other witnesses and to weigh credibility.

We have reviewed all of the evidence cited by the parties in support and in opposition to Berger's motion for summary judgment. It would strain credulity to conclude that, as a matter of law, a reasonable jury could not find that Berger had an actual awareness of the commencement of construction on or along Varner Road in December 2006. Consequently, a triable issue of material fact exists as to whether Berger had actual knowledge of the construction of Varner Road, which would thereby excuse Granite's failure to serve Berger with a preliminary 20-day notice under section 3097. Summary judgment must be reversed on this ground alone.

IV.

A Triable Issue of Material Fact Exists Regarding Whether Granite Served Desert Gold with a Preliminary 20-day Notice as the Reputed Owner of the Property.

Section 3097, subdivision (a) required that a claimant serve a preliminary 20-day notice on "the owner or reputed owner" of the property. The term "reputed,"

17

whether used to refer to the owner or the construction lender, for purposes of section 3097, is "a person or entity reasonably and in good faith believed by the claimant" to be the actual owner or construction lender. (*Kodiak Industries, Inc. v. Ellis* (1986) 185 Cal.App.3d 75, 87.) "The test is an objective one and a claimant must be deemed to possess sufficient information about a reputed lender when a reasonable person, given the claimant's information, would have been led to believe in good faith" that a putative owner was the actual owner. (*Ibid.*) "[T]he information on which a reasonable claimant should rely must be cloaked with sufficient indicia of reliability— such as statements from the owner, general contractor, or lender itself or their agents—so as to distinguish this information from a mere guess or some ill-founded conjecture." (*Ibid.*)

Here, the trial court's minute order granting summary judgment also stated Granite was not exempt from the preliminary 20-day notice requirement on the ground it had "acted in good faith." Presumably, the court's statement was in response to Granite's argument that Granite, by serving Desert Gold on December 1, 2006, with a preliminary 20-day notice, had discharged its obligation under section 3097 by serving the reputed owner of the property with that notice.

The record shows the ordinary course of preparing for and commencing construction on the project was disturbed because of the collective goal of all those involved to have Varner Road widened and otherwise improved by the start of the Bob Hope Desert Classic golf tournament on January 17, 2007. Consequently, the Granite contract was entered into before the grant deed was executed transferring the property to Desert Gold, and construction began pursuant to the Granite contract before that grant deed was recorded in January 2007.

The evidence shows that, in December 2006, the parties appeared to operate under the premise that Desert Gold's acquisition of the property was a foregone conclusion. Despite their knowledge, Auen and Vance did not interfere with the

18

construction activities on Varner Road, and the County did not stop construction activities that occurred before the issuance of an encroachment permit. (Oliphant testified at his deposition that a transportation inspector from the County was out on the site every day and the inspector did not "red tag" the project or issue a stop notice.) Reynolds testified that he would have been fired if he had not believed there was an agreement in place providing a developer's ownership of the property before construction began. CalVest and Desert Gold provided Granite with information that Desert Gold was the owner of the property for purposes of the preliminary 20-day notices.

On the other hand, however, Granite was on notice that Berger was the original owner of the property but did not confirm ownership of the property when construction commenced. Consequently, we conclude a triable issue of material fact exists as to whether Granite, by serving Desert Gold as the reputed owner of the property, had acted reasonably and in good faith. Therefore, the motion for summary judgment failed on this ground, in addition to and independent of the ground, discussed *ante*, that a triable issue of material fact exists as to Berger's actual knowledge.

In light of our reversal of summary judgment due to the existence of triable issues of material fact, we do not need to also address Berger's argument regarding the legal effect of Granite's failure to prepare proofs of service for the preliminary 20-day notices it served, as required by section 3114.[4] Berger argues that Granite's preliminary 20-day notices would not be effective unless Granite prepared proofs of service. Without citing to supportive legal authority other than the statute itself, Berger suggests a contractor that provided labor, services, and materials under a construction contract, and complied with all the preliminary 20-day notice statutory requirements, except for the

---

[4] Section 3114 provided: "A claimant shall be entitled to enforce a lien only if he has given the preliminary 20-day notice (private work) in accordance with the provisions of Section 3097, if required by that section, and has made proof of service in accordance with the provisions of Section 3097.1."

19

requirement it must also prepare a proof of service, forfeits the right to recover amounts due under a construction contract through a mechanic's lien. We do not agree the Legislature intended such an automatic and absolute forfeiture of the mechanic's lien remedy to such a contractor in light of the remedial nature of the mechanic's lien statutes, which the California Supreme Court has held must be "liberally construed for the protection of laborers and materialmen." (*Connolly Development, Inc. v. Superior Court*, *supra*, 17 Cal.3d at pp. 826-827.) In any event, the trial court's minute order granting Berger's motion for summary judgment does not suggest the court relied on Granite's failure to prepare proofs of service as a basis for its ruling.

Because we reverse summary judgment, we also do not need to address whether a triable issue of material fact exists regarding who owned the property at the time construction commenced for the purpose of the preliminary 20-day notice requirement. Travelers argues that Desert Gold became the owner of the property on December 7, 2006, when the grant deed was executed, though not yet recorded, which argument, Berger contends, is forfeited for failure to raise it in the trial court. (See Civ. Code, § 1217 ["An unrecorded instrument is valid as between the parties thereto and those who have notice thereof."].)

V.

THE TRIAL COURT'S MINUTE ORDER DOES NOT ADDRESS THE EFFECT OF THE PRELIMINARY 20-DAY NOTICE GRANITE SERVED ON BERGER IN FEBRUARY 2008.

On February 22, 2008, Granite prepared a preliminary 20-day notice that identified Berger as "lender/surety" (capitalization omitted) and stated a $2,480,129.49 estimate for the total price of additional labor, equipment, and materials needed for the project. The record contains a copy of the notice and a certified mail return receipt, but does not contain a proof of service for that notice.

The trial court's minute order does not address the effect, if any, that February 2008 notice to Berger had on the viability of the foreclosure on the mechanic's

20

lien claim.  Section 3097, subdivision (d) provided in part:  "If labor, service, equipment, or materials have been furnished to a jobsite by a claimant who did not give a preliminary notice, that claimant shall not be precluded from giving a preliminary notice at any time thereafter.  The claimant shall, however, be entitled to record a lien, file a stop notice, and assert a claim against a payment bond only for labor, service, equipment, or material furnished within 20 days prior to the service of the preliminary notice, and at any time thereafter."

Granite produced evidence that it continued work on the project until February 11, 2008, less than 20 days before service of the preliminary 20-day notice served on Berger.  Therefore, a triable issue of material fact exists regarding the viability of the mechanic's lien to recover labor, service, equipment, or materials furnished within 20 days prior to service of the preliminary 20-day notice and any work thereafter completed by Granite.

## DISPOSITION

The judgment is reversed.  Appellant shall recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

21